THE HONORABLE RICHARD A. JONES

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

ABRAHAM LEAVITT,
            *Plaintiff*,

vs.

CENTRAL CREDIT, LLC,
            *Defendant*.

Case No. 2:23-cv-01817-RAJ

**First-Amended Complaint**

**Violations of the federal Fair Credit Reporting Act, 15 U.S.C. § 1681** *et seq.***, and**

**Violations of the Washington Fair Credit Reporting Act, RCW § 19.182.005** *et seq.*

*[Jury Trial Demanded]*

Plaintiff Abraham Leavitt brings this action against Defendant Central Credit LLC ("Defendant" or "Central Credit"), based upon personal knowledge, upon information and belief where applicable, and upon the investigation of counsel. The action arises under both the federal Fair Credit Reporting Act ("FCRA") and the Washington Fair Credit Reporting Act ("WFCRA"), statutes enacted by the U.S. Congress and the Washington Legislature to protect consumers from abuses of power in the credit-reporting process, abuses that harm both consumers and the businesses that rely upon credit reporting.

AMENDED COMPLAINT                           1

## CONTENTS

NATURE OF THE CASE ...................................................................................................... 4

PARTIES TO THE ACTION ............................................................................................... 5

JURISDICTION & VENUE ................................................................................................ 5

FACTUAL ALLEGATIONS ............................................................................................... 6

I.  FAILURE TO REASONABLY INVESTIGATE DISPUTED CREDIT REPORTING, 15 U.S.C.
    § 1681ı(A)(1) ............................................................................................................. 6

    A.  Consumer ...................................................................................................... 7

    B.  Consumer Reporting Agency ........................................................................ 7

    C.  Inaccurate Information in Consumer File ..................................................... 8

    D.  Direct Notification of Dispute ..................................................................... 9

    E.  Failure to Reasonably Investigate Inaccuracy .......................................... 10

    F.  Willful Failure ............................................................................................ 10

    G.  Negligent Failure (in the alternative) ........................................................ 11

    H.  Actual Damages .......................................................................................... 11

II. FAILURE TO NOTIFY CONSUMER OF RIGHT TO KNOW PROCEDURES USED AND OF RIGHT TO
    INCLUDE STATEMENT OF DISPUTE, 15 U.S.C. § 1681ı(A)(6)(B)(III)-(IV) ......................... 12

    A.  Consumer .................................................................................................... 12

    B.  Consumer Reporting Agency ...................................................................... 13

    C.  Inaccurate Information in Consumer File ................................................... 14

    D.  Direct Notification of Dispute ................................................................... 15

    E.  Failure to Notify Consumer of Rights to Know Investigation Procedure .......... 15

    F.  Willful Failure ............................................................................................ 16

    G.  Negligent Failure (in the alternative) ........................................................ 17

    H.  Actual Damages .......................................................................................... 17

III. FAILURE TO REASONABLY INVESTIGATE DISPUTED CREDIT REPORTING, RCW
    19.182.090(1), AND TO PROVIDE NOTICE OF ABILITY TO PROVIDE STATEMENT OF DISPUTE,
    RCW 19.182.090(8)(B)(V) .......................................................................................... 18

A.      Unfair and Deceptive Practice ............................................................. 18

          i.       Consumer ................................................................................... 19

          ii.      Consumer Reporting Agency ..................................................... 19

          iii.     Inaccuracy of Information in Consumer's File ........................... 19

          iv.      Direct Notification of Dispute ................................................... 20

          v.       Failure to Reasonably Investigate Inaccuracy ......................... 20

          vi.      Failure to Provide Notice of Right to Provide Statement of Dispute ...... 20

          vii.     Willful Failure ........................................................................... 20

          viii.    Negligent Failure (in the alternative) ....................................... 20

B.      Occurring in Trade or Commerce .......................................................... 20

C.      Adverse Public-Interest Impact ............................................................. 21

D.      Injury to Business or Property ............................................................... 22

E.      Causation of Injury ................................................................................ 23

PRAYER FOR RELIEF ............................................................................................. 23

JURY DEMAND ....................................................................................................... 23

CERTIFICATE OF SERVICE ................................................................................... 24

## NATURE OF THE CASE

1. An error in a credit report can seem like a minor bureaucratic matter. It's not. Often, errors in credit reporting have devastating consequences and, worse, when those affected try their level best — to the point of exasperation and frustration — to rectify the error out of court, the consumer-reporting agencies do little to assist them, let alone fulfill their statutory obligations to consumers and the users of the credit reports to keep them accurate. Instead, they all too often make the business decision that rank unlawfulness and lack of compliance with Congress' creation of civil rights for citizens is more profitable — and so leave citizens with no other place to go than court. As the Supreme Court has recently and eloquently put it, credit reporting (often more colloquially referred to by its numerical representation as a credit score) has a big impact upon us: "A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business. Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)." *E.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 144 S. Ct. 457, 464 (2024); *id.* at ("Mistakes like these can lead lenders to insist on higher interest rates or other terms that make it difficult or impossible for consumers to obtain a mortgage, auto loan, student loan, or other credit."); *see also Jaras v. Equifax Inc.*, 766 F. App'x 492, 496 (9th Cir. 2019) (Berzon, J. dissenting) ("Given their ubiquity and importance in modern life—in employment decisions, in loan applications, in home purchases, and much more—the real-world implications of material inaccuracies in [credit] reports seem patent on their face. That is because the threat to a consumer's livelihood is caused by the very existence of inaccurate information in his credit report and the likelihood that such information will be important to one of the many entities who make use of such reports." (cleaned up)).

2. This case involves credit-reporting in the context of the casino, gambling, and gaming industry. Yet, it nonetheless reflects a common feature of credit-reporting disputes: a willful

and reckless failure by the credit-reporting agency, Defendant Central Credit LLC here, to take seriously its obligations to try to get the information on file correct when a consumer puts in the time to do so (often after, as here, facing significant professional and personal consequences). Moreover, it also involves a rank failure to notify consumer's of their rights —in a manner that Congress has expressly dictated and required in plain language for decades —in a manner that would avoid many credit-reporting disputes. This is profoundly wrongful conduct. It was profoundly harmful for Mr. Leavitt —and likely many others. It should never have occurred.

## PARTIES TO THE ACTION

3. _Plaintiff Abraham Leavitt_: Plaintiff Abraham Leavitt is a natural person and a citizen of the State of Washington. He resides in Mercer Island, Washington.

4. _Defendant Central Credit, LLC_: Defendant Central Credit is a Delaware-incorporated limited liability company with a principal place of business in Las Vegas, Nevada. Central Credit is a wholly-owned subsidiary of Everi Holdings, Inc.

## JURISDICTION & VENUE

5. _Subject-Matter Jurisdiction_: This Honorable Court has federal-question jurisdiction over this civil action. The FCRA claims arise under federal statutes, giving this Court federal-question jurisdiction over them. _See_ 28 U.S.C. § 1331. The WFCRA claims are sufficiently related in fact for the Court to exercise supplemental jurisdiction over these related state-law claims. _See_ 28 U.S.C. § 1367(a). Accordingly, the Court has, and can exercise, subject-matter jurisdiction over all claims in suit.

6. _Personal Jurisdiction_: This Honorable Court has personal jurisdiction over Defendant Central Credit LLC. Central Credit has submitted to the personal jurisdiction of this Court by

1

2

3

4

5

6

7

8

9

10

operation of Rule 12(h) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(h)(1)(A)-(B). Moreover, even if Central Credit had not so submitted, it is subject to the claim-specific jurisdiction of the Superior Courts of Washington because Plaintiff's injury occurred in Washington state. *See Lewis By and Through Lewis v. Bours*, 119 Wn.2d 667, 835 P.2d 221 (1992) ("Generally, when an injury occurs in Washington, it is an inseparable part of the 'tortious act' and that act is deemed to have occurred in this state for the purposes of the long-arm statute[.]"). Therefore, pursuant to Rule 4(k)(1)(A) and Rule 4(d) of the Federal Rule of Civil Procedure, this Court has jurisdiction over based upon service thereof.

11

12

13

14

15

16

17

7.    *Venue*: This Honorable Court is a proper venue for this action. Central Credit has submitted to the personal jurisdiction of this Court by operation of Rule 12(h) of the Federal Rules of Civil Procedure. *See* Fed. R. Civ. P. 12(h)(1)(A)-(B). Moreover, even if Central Credit had not so submitted, a substantial part of the events or omissions giving rise to the claims in suit occurred in this judicial district, making this judicial district convenient. *See* 28 U.S.C. 1391(b)(2).

18

**FACTUAL ALLEGATIONS**

19

20

I.    **FAILURE TO REASONABLY INVESTIGATE DISPUTED CREDIT REPORTING, 15 U.S.C. § 1681i(a)(1)**

21

22

23

24

25

26

27

8.    Defendant has violated the federal Fair Credit Reporting Act ("FCRA"), 16 U.S.C. § 1681 *et seq.*, by virtue of its failure to conduct a reasonable investigation of factually and materially inaccurate, misleading, incorrect, and incomplete information in its own credit reports that can and did affect credit-making decisions for Plaintiff by third-party users of Defendant's inaccurate credit reports. Insofar as Defendant attempted to block Plaintiff from making a dispute and also did not make basic inquiries as to the dispute, it did so willfully.

28

### A.    Consumer

9.  Mr. Leavitt is a "consumer," as defined by the FCRA.  Specifically, the FCRA defines a "consumer" to mean an "individual."  15 U.S.C. § 1681a(c).  Mr. Leavitt fits the bill.  He is a natural, individual human being—not an artificial person such as a corporate or limited-liability entity.  As an individual natural person, Mr. Leavitt is the type of person within the ambit of the FCRA's protections, that FCRA was intended to protect, and is imbued with statutory authority to bring civil actions for noncompliance with the FCRA's provisions.  *See* 15 U.S.C §§ 1681n, 1681o.

### B.    Consumer Reporting Agency

10.  Central Credit, LLC, is a "consumer reporting agency," as defined by the FCRA.  Specifically, the FCRA defines a "consumer reporting agency" (or "CRA") to mean "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

   a.  Central Credit is a person.  In legal contexts, as here, the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.  Central Credit is Delaware-incorporated corporation and company and, as such, is a person as that term is understood under the law.

   b.  A substantial part of Central Credit's business is the assembly or evaluation of credit information on consumers.  Specifically, for decades, Central Credit has been providing computerized consumer reporting regarding the creditworthiness of casino

clients and casino patrons.  Central Credit assemblies the information by acting as a data purchaser from other CRAs, such as Experian and TransUnion.  Information collected includes bankruptcy, assets, income, debts, *etc.*  Then, Central Credit evaluates the information itself that it assembles and then produces consumer reports on these consumers.

c.  Central Credit assembles and collects this information for the purpose of providing this information to third parties.  It does not do so solely for its own internal acquisition and retention of the information.  Rather, it's business strategy and structure is the provision of this information to third parties, like casino and other gambling operations.

d.  Central Credit does not do so for free.  Rather, as discovery will demonstrate, it charges some form of payment or monetary dues for its credit reports.

e.  Central Credit uses a means and facility of interstate commerce in providing these materials.  For example, as discovery will demonstrate, Central Credit uses the Internet and interstate telephones to both arrange for, assemble, evaluate, create, and distribute its credit reports.  Thus, Central Credit is a consumer reporting agency as that term is defined in the FCRA.

### C.    Inaccurate Information in Consumer File

11.  Central Credit placed inaccurate and/or incomplete information in Plaintiff's credit file or credit report.  Specifically, Plaintiff was gaming at two casino or gaming locations located in the Bahamas.  Although Plaintiff incurred gaming debts while gaming there, Plaintiff paid them off in their entirety through a combination of cash and gambling chips before leaving these gaming locations each time.  The locations in the Bahamas used a tablet computer, somewhat like an iPad, to register the payment and that payment was so registered in that

manner before Plaintiff left.  So, although debts were incurred at these gaming locations, they were immediately paid off in full, fully satisfied, and was not owed as such.  Nonetheless, Central Credit included they amounts on its version of Plaintiff's credit report as an unpaid gambling debt.  Because it reported these amounts as unpaid gambling debt when they were, in fact, fully paid and fully satisfied, Central Credit's consumer report on Plaintiff contained inaccurate and incomplete information.  Moreover, because these were significant and material amounts that were falsely, incorrect, inaccurate, and incompletely reported as not paid off in full, these had a significant and material impact upon the view of the credit reporting.  Central Credit included this false — and materially and significantly false — information in its consumer reports on Plaintiff and then distributed them on various occasions, including on or around October 15, 2023, to a number of gaming locations including MGM Casino Properties, Station Casino Properties, Caesars Entertainment Properties, and other casino, gambling, and gaming establishments – as to be determined in discovery.  These inaccuracies can and did affect credit decisions because they showed massive arrears on debt when, in fact, those debts had been paid in full almost immediately after they were incurred.  In short, there was blatant factual inaccuracy of the kind that can and did profoundly affect credit decisions, as detailed further below.

**D.**    **Direct Notification of Dispute**

12.    On or around, October 28, 2023, Plaintiff notified Central Credit regarding the inaccurate and incomplete information.  Plaintiff informed Central Credit that this information was false and requested that Central Credit correct this information by removing the non-payment and falsely reported debt from his gaming credit report.  As Plaintiff will show, he made multiple communications requesting correction.  By personally initiating these communications and being involved in all of them, Plaintiff communicated these directly, using his emails, *etc.*

**E.    Failure to Reasonably Investigate Inaccuracy**

13.    Although Central Credit in fact ultimately receive Plaintiff's communications (as Central Credit itself later confirmed), Central Credit did not conduct a reasonable investigation into Plaintiff's request for correction.   Instead, Central Credit acted evasively and willfully attempted to skirt its statutory obligations to conduct reasonable investigations to ensure the accuracy of the credit information that it reports.   For example, Central Credit, acting through one of its employees, simply blocked Plaintiff's email rather than work with him to discern the full nature and scope of its own inaccuracies and errors.   Then, as allowance of discovery will show and on information and belief, after Plaintiff persisted, the full extent of Central Credit's investigation was unreasonable as it only amount to a simply request to the credit-reporting data furnishers as to whether it was accurate.   Specifically, after Central Credit stopped evading Plaintiff's inquiry through egregious tactics such as blocking his email or acting disrespectfully toward him, Central Credit, on information and belief, made a *pro forma* request to its furnishers that was not a reasonable or good-faith attempt to obtain accuracy as to his credit report.   For example, on information and belief, Central Credit made no meaningful attempt to discern the nature of the inaccuracy from Plaintiff.   Furthermore, Central Credit, on information and belief, made no attempt to determine whether the gaming debts, even if incurred, were fully paid off and fully satisfied – to wit, fully paid off and fully satisfied prior to the reporting of the debts themselves.   Given these failures, Central Credit failed to either conduct a reasonable investigation or to correct the inaccurate information or remove it from Plaintiff's credit file in the required timeframe.

**F.    Willful Failure**

14.    Violations of the FCRA are deemed to have been done "willfully" if they were "knowing" violations or violations made with a "reckless disregard of the law." *Safeco Ins. Co. of Am.*

*v. Burr*, 551 U.S. 47, 59 (2007). At its essence, reckless behavior is behavior that poses a "high risk of harm, objectively assessed[.]" *Id.* at 69. Affirmatively acting to block communications with a consumer to avoid fulfilling credit-reporting investigation and obligations imposed by statute is willful behavior or at least a reckless disregard for reasonable investigations. That's what Central Credit did. Then, when Plaintiff persisted, on information and belief, it merely inquired whether the debt was incurred, but never whether it was paid. By analogy, this is akin to foreclosing on a fully paid-off home on the rationale that a mortgage was at some point on the house, even though that mortgage was fully paid off. Central Credit was not structured or attempting to seriously fulfill its obligations, but rather, on information and belief, instructs and trains its employees to do as little as possible in complying with the law, rather than recognizing that its reporting has massive implications on the lives of those it reports on and, as such, it acts in ways that have a high risk of harm, such as by systematically failing to conduct investigations that would meaningfully resolve disputes and correct credit reports out of court.

### G.    Negligent Failure (in the alternative)

15. In the alternative, even if the above is not willful or reckless conduct in violation of the credit-reporting laws, it is at least unreasonable and negligent to block a consumer trying to dispute their credit, to do such an unreasonable investigation that it makes no serious attempt to determine if, as a matter of fact, that the amount was actually paid. Accordingly, these violations were at least negligent.

### H.    Actual Damages

16. Plaintiff has suffered actual injury and damages caused by and as a result of Central Credit's failure to conduct a reasonable investigation. While this factually inaccurate and misleading information was on Central Credit's own credit report prepared as to Plaintiff, Central Credit,

1  on information and belief that will be established through further discovery, disseminated this

2  false credit information to various gaming companies, including MGM Casino Properties,

3  Station Casino Properties, Caesars Entertainment Properties, and other gaming properties.

4  These credit reports then damaged Plaintiff in an especially harmful manner because Plaintiff

5  has exceptional talents and is able to make money through gambling and gaming.  Yet, the

6  false credit reports resulted in credit lines at various and major gaming locations to restrict his

7  access to credit.  Accordingly, he was unable to make as much money.  Moreover, his

8  reputation was harmed and this reputational harm was caused, on information and belief, he

9  had lesser access to money-making opportunities as a result of it.  Moreover, this experience

10  has been tremendously psychologically harmful, devastating, stressful, *etc.* to plaintiff.  The

11  stress of being told that he owes significant sums of money that he has already paid, of being

12  disrespected as he tries to correct it, and facing significant delays in the correction.  All of

13  these cause actual damages to Plaintiff, in amounts to be determined at trial.

## II. FAILURE TO NOTIFY CONSUMER OF RIGHT TO KNOW PROCEDURES USED AND OF RIGHT TO INCLUDE STATEMENT OF DISPUTE, 15 U.S.C. § 1681i(a)(6)(B)(iii)-(iv)

17.  Defendant willfully, recklessly, and negligently violated 15 U.S.C. 1681i(a)(6)(B) by failing

to provide the required statements set forth expressly by statute to Plaintiff in its letter to him.

Specifically, Defendant's November 2023 letter did not include notification that Plaintiff had

a right to know the procedure that Defendant used in conducting the reinvestigation and that

Plaintiff also had a right to include a statement of dispute.  As a result of these deficiencies,

Plaintiff also suffered damages.

### A.    Consumer

18.  Mr. Leavitt is a "consumer," as defined by the FCRA.  Specifically, the FCRA defines a

"consumer" to mean an "individual."  15 U.S.C. § 1681a(c).  Mr. Leavitt fits the bill.  He is a

natural, individual human being—not an artificial person such as a corporate or limited-liability entity.  As an individual natural person, Mr. Leavitt is the type of person within the ambit of the FCRA's protections, that FCRA was intended to protect, and is imbued with statutory authority to bring civil actions for noncompliance with the FCRA's provisions.  *See* 15 U.S.C §§ 1681n, 1681o.

**B.** **Consumer Reporting Agency**

19.   Central Credit, LLC, is a "consumer reporting agency," as defined by the FCRA.  Specifically, the FCRA defines a "consumer reporting agency" (or "CRA") to mean "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and which uses any means or facility of interstate commerce for the purpose of preparing or furnishing consumer reports."  15 U.S.C. § 1681a(f).

   a.   Central Credit is a person.  In legal contexts, as here, the word "person" includes "corporations, companies, associations, firms, partnerships, societies, and joint stock companies, as well as individuals."  1 U.S.C. § 1.  Central Credit is Delaware-incorporated corporation and company and, as such, is a person as that term is understood under the law.

   b.   A substantial part of Central Credit's business is the assembly or evaluation of credit information on consumers.  Specifically, for decades, Central Credit has been providing computerized consumer reporting regarding the creditworthiness of casino clients and casino patrons.  Central Credit assemblies the information by acting as a data purchaser from other CRAs, such as Experian and TransUnion.  Information collected includes bankruptcy, assets, income, debts, *etc.*  Then, Central Credit

evaluates the information itself that it assembles and then produces consumer reports on these consumers.

c.  Central Credit assembles and collects this information for the purpose of providing this information to third parties. It does not do so solely for its own internal acquisition and retention of the information. Rather, it's business strategy and structure is the provision of this information to third parties, like casino and other gambling operations.

d.  Central Credit does not do so for free. Rather, as discovery will demonstrate, it charges some form of payment or monetary dues for its credit reports.

e.  Central Credit uses a means and facility of interstate commerce in providing these materials. For example, as discovery will demonstrate, Central Credit uses the Internet and interstate telephones to both arrange for, assemble, evaluate, create, and distribute its credit reports. Thus, Central Credit is a consumer reporting agency as that term is defined in the FCRA.

**C.    Inaccurate Information in Consumer File**

20.  Central Credit placed inaccurate and/or incomplete information in Plaintiff's credit file or credit report. Specifically, Plaintiff was gaming at two casino or gaming locations located in the Bahamas. Although Plaintiff incurred gaming debts while gaming there, Plaintiff paid them off in their entirety through a combination of cash and gambling chips before leaving these gaming locations each time. The locations in the Bahamas used a tablet computer, somewhat like an iPad, to register the payment and that payment was so registered in that manner before Plaintiff left. So, although debts were incurred at these gaming locations, they were immediately paid off in full, fully satisfied, and was not owed as such. Nonetheless, Central Credit included they amounts on its version of Plaintiff's credit report as an unpaid

gambling debt. Because it reported these amounts as unpaid gambling debt when they were, in fact, fully paid and fully satisfied, Central Credit's consumer report on Plaintiff contained inaccurate and incomplete information. Moreover, because these were significant and material amounts that were falsely, incorrect, inaccurate, and incompletely reported as not paid off in full, these had a significant and material impact upon the view of the credit reporting. Central Credit included this false — and materially and significantly false — information in its consumer reports on Plaintiff and then distributed them on various occasions, including on or around October 15, 2023, to a number of gaming locations including MGM Casino Properties, Station Casino Properties, Caesars Entertainment Properties, and other casino, gambling, and gaming establishments – as to be determined in discovery. These inaccuracies can and did affect credit decisions because they showed massive arrears on debt when, in fact, those debts had been paid in full almost immediately after they were incurred. In short, there was blatant factual inaccuracy of the kind that can and did profoundly affect credit decisions, as detailed further below.

**D.    Direct Notification of Dispute**

21. On or around, October 28, 2023, Plaintiff notified Central Credit regarding the inaccurate and incomplete information. Plaintiff informed Central Credit that this information was false and requested that Central Credit correct this information by removing the non-payment and falsely reported debt from his gaming credit report. As Plaintiff will show, he made multiple communications requesting correction. By personally initiating these communications and being involved in all of them, Plaintiff communicated these directly, using his emails, *etc.*

**E.    Failure to Notify Consumer of Rights to Know Investigation Procedure**

22. The FCRA sets forth a clear procedure for what CRAs like Central Credit must do after conducting a reinvestigation. In fact, it provides a clear list that can be simply repeated every

time a reinvestigation is completed.  Specifically, the FCRA sets forth six requirements for the letter your client sends regarding its reinvestigations.  Those requirements are set forth in 15 U.S.C. 1681i(a)(6)(B)(i)-(v).  Central Credit sent Plaintiff a November 21, 2023, letter and that letter meets the requirements of subsections (i)-(ii).  That letter, however, doesn't meet the requirements of subsections (iii)-(iv).  Specifically, Central Credit's letter to Plaintiff on that date does not include a notification that Plaintiff has a right to know a detailed description of the procedures used to conduct the reinvestigation.  Furthermore, the letter does not contain a notice that Plaintiff has a right to include a statement of dispute in his credit report prepared by Central Credit.  Moreover, Central Credit also sent a "summary of rights" attachment to the letter, but that letter does not mention to Plaintiff Plaintiff's right to include a statement of dispute.

### F.    **Willful Failure**

23.  Violations of the FCRA are deemed to have been done "willfully" if they were "knowing" violations or violations made with a "reckless disregard of the law."  *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 59 (2007).  At its essence, reckless behavior is behavior that poses a "high risk of harm, objectively assessed[.]"  *Id.* at 69.  Here, the failure was reckless.  For one of the failures, earlier letters appear to have included it, suggesting that the later failure was either intentional, purposeful, knowing, or done through a major breakdown in services.  Coupled with the fact that Central Credit, through an employee, blocked Plaintiff from communicating his disputes, this is, on information and belief, a willful failure by Central Credit here.  It is especially willful insofar as the requirements are spelled out concretely and directly in the statute itself and so, it is reckless and objectively risky for consumer rights in their credit profiles to simply exclude it when even the most rudimentary understanding or perusal of the statute would lead to successful understanding of it and compliance.

### G.    <u>Negligent Failure (in the alternative)</u>

24. In the alternative, the failure to comply with the FCRA in this regard is at least negligent and unreasonable, especially because these statutory requirements are made explicitly and expressly clear on the face of the statute in clear language.

### H.    <u>Actual Damages</u>

25. Had Plaintiff been informed of these rights, Plaintiff would have taken advantage of and exercised his right.  Moreover, the exercise of these rights would have limited the injuries that Plaintiff suffered.  Plaintiff has suffered actual injury and damages caused by and as a result of Central Credit's failure to conduct a reasonable investigation.   While this factually inaccurate and misleading information was on Central Credit's own credit report prepared as to Plaintiff, Central Credit, on information and belief that will be established through further discovery, disseminated this false credit information to various gaming companies, including MGM Casino Properties, Station Casino Properties, Caesars Entertainment Properties, and other gaming properties.  These credit reports then damaged Plaintiff in an especially harmful manner because Plaintiff has exceptional talents and is able to make money through gambling and gaming.  Yet, the false credit reports resulted in credit lines at various and major gaming locations to restrict his access to credit.  Accordingly, he was unable to make as much money.  Moreover, his reputation was harmed and this reputational harm was caused, on information and belief, he had lesser access to money-making opportunities as a result of it.  Moreover, this experience has been tremendously psychologically harmful, devastating, stressful, *etc.* to plaintiff.  The stress of being told that he owes significant sums of money that he has already paid, of being disrespected as he tries to correct it, and facing significant delays in the correction.  All of these cause actual damages to Plaintiff, in amounts to be determined at trial.  Yet, had Plaintiff known that he has a point-blank statutory right to learn the precise contours

of the abysmal excuse for a reinvestigation undertaken by Central Credit, he would have

exercise the right and then, in light of this information, he would have been able to more

quickly apprise Central Credit of the egregious failure points of the investigation and where

they could correct it.  Had this happened, Central Credit either would have corrected its error

promptly or it would have undertaken a better investigation that would have resulted in

correction of the massively incorrect credit report.  Likewise, had Plaintiff known about his

right to include a statement of dispute, he would have exercised this right and the fact that

these were undisputed arrears on the credit report played a significant role, on information and

belief, in the reputational, financial, credit-worthiness, and economic harms at issue here.

III.    **FAILURE TO REASONABLY INVESTIGATE DISPUTED CREDIT REPORTING, RCW 19.182.090(1), and to Provide Notice of Ability to Provide Statement of Dispute, RCW 19.182.090(8)(B)(v)**

26.    Defendant has violated the Washington Consumer Protection Act ("WCPA"), RCW 19.86.010, *et seq.*, by virtue of its violations of the Washington Fair Credit Reporting Act ("WFCRA"), RCW 19.182.005, *et seq.*  Specifically, Defendant failed to reasonably investigate the completeness or accuracy of incomplete or inaccurate information contained in Defendant's file on Plaintiff even after receiving notice of the disputed nature of that information.  *See* RCW 19.182.090(1).  Likewise, Defendant willfully, reckless, and/or negligently failed to provide notice of the consumer's right to file a statement in the consumer report disputing the credit reporting.

A.  **Unfair and Deceptive Practice**

27.  The first element of a Washington CPA claim is the requirement that there be an "unfair or deceptive act or practice[.]"  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.093(1)-(3) ("unfair or deceptive acts or practices").  The WFCRA  establishes that violations of the chapter are unfair or deceptive per se.  *See*

RCW 19.182.150 ("A violation of this chapter is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.").  Central Credit has violated the WFCRA's substantive  provisions and, accordingly, has by virtue of those violations committed unfair and deceptive trade practices *per se*.  The above allegations are reincorporated herein.

               i.    *Consumer*

28.   As further detailed above and re-incorporated here, Mr. Leavitt is an individual, so he is a consumer.  *See* RCW 19.18.010(3).

               ii.    *Consumer Reporting Agency*

29.   As further detailed above and re-incorporated here, Central Credit a person who, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the business of assembling or evaluating consumer credit information or other information on consumers for the purpose of furnishing consumer reports to third parties, and who uses any means or facility of commerce for the purpose of preparing or furnishing consumer reports.  Accordingly, Central Credit is a consumer reporting agency.  *See* RCW 19.180.010(5).

               iii.    *Inaccuracy of Information in Consumer's File*

30.   As further detailed above and re-incorporated here, Central Credit prepared a consumer report about Plaintiff and included it in Plaintiff's file—with the inaccurate, incomplete, and incorrect information being the reporting of a debt as being in majorly in arrears when, in fact, the debt had been fully paid via cash and gambling tokens to the relevant casinos before Plaintiff left the casino.  This inaccuracy was so significant that major credit decisions can and were made regarding it.

          *iv.*    <u>Direct Notification of Dispute</u>

31.  As further detailed above and re-incorporated here, Central Credit was directly notified by Plaintiff regarding the inaccuracy.

          *v.*    <u>Failure to Reasonably Investigate Inaccuracy</u>

32.  As further detailed above and re-incorporated here, Central Credit did not reasonably investigate the disputed information.

          *vi.*    <u>Failure to Provide Notice of Right to Provide Statement of Dispute</u>

33.  As further details above and re-incorporated here, Central Credit failed to provide information regarding the Plaintiff's right to file a brief statement as authorized by RCW 19.180.090(6)..

          *vii.*    <u>Willful Failure</u>

34.  As further details above and re-incorporated here, Central Credit failed to reasonably investigate and to provide a notice of these rights both willfully and recklessly.

          *viii.*    <u>Negligent Failure (in the alternative)</u>

35.  In the alternative, and as detailed above and re-incorporated here, Central Credit failure to reasonably investigate was itself unreasonable.

36.  Accordingly, Central Credit acted in a manner that is *per se* a deceptive and unfair by virtue of the WFCRA.  *See* RCW 19.182.150.

### B.  <u>Occurring in Trade or Commerce</u>

37.  The second element of a Washington CPA claim is the requirement that the unfair or deceptive act or practice have occurred "in trade or commerce[.]"  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.020 ("in the conduct of

any trade or commerce"); RCW 19.86.020(2) (defining "'Trade' and 'commerce'").   As discussed above and re-incorporated here, Central Credit's assembly, evaluation, creation, dissemination, investigation, communications, *etc.*, were in interstate commerce, including Washington.   These acts were committed in commerce in a manner that both directly and indirectly affects residents of Washington, especially Plaintiff, and is directed at Washington.

38.    Moreover, as reasonable discovery will likely demonstrate, Defendants are not singling out Plaintiff.   They are involved in mass-marketing emails to a broad swatch of consumers in the State of Washington.

## C. **Adverse Public-Interest Impact**

39.    The third element of a WCPA claim is the requirement that the unfair or deceptive practice or act have adverse "public interest impact[.]"   *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986).   There are three ways to meet this third element under the WCPA.   RCW 19.86.093(1)-(3).   Defendant's acts and practices meet all three tests of injury to the public interest.

40.    The first way to establish that an act or practice is injurious to the public is to demonstrate that the act or practice violates a separate Washington statute that "incorporates" the WCPA. RCW 19.86.093(1).   The WFCRA incorporates the WCPA.   RCW 19.182.150 ("A violation of this chapter is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW.").   Therefore, the WCPA's third element is met *per se* when the unfair or deceptive act or practice is itself a violation of the WFCRA.   Here, Defendant has violated the WFCRA.   Accordingly, the WCPA's third element of adverse public-interest impact is met by operation of law as to Defendant's WFCRA violations.

41. The second way to establish that an act or practice is injurious to the public interest is to show that the act or practice violates a statute with a "specific legislative declaration of public interest impact[.]" RCW 19.86.093(2). The WFCRA has specific legislative declarations of its public-interest importance. RCW 19.182.005 ("The legislature finds and declares that consumers have a vital interest in establishing and maintaining creditworthiness."); RCW 19.182.150 ("The legislature finds that the practices covered by this chapter are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW."). Thus, the WCPA's third element is met *per se* when the unfair or deceptive act or practice is itself a violation of the WFCRA. Here, Defendant has violated the WFCRA, establishing the WCPA's third element of adverse public-interest impact *per se*.

42. The third way to establish that an act or practice is injurious to the public interest is to show that adverse public-interest impact directly by showing the act or practice has (a) "[i]njured other persons;" (b) "had the capacity to injure other persons;" or (c) "has the capacity to injure other persons." RCW 19.86.093(3)(a)-(c). One such impact is sufficient. RCW 19.86.093(3) ("or"). Defendant's unlawful acts and practices meet all three factual tests of adverse public-interest impact listed in RCW 19.86.093(a)-(c):

   a. As further investigation and discovery will likely demonstrate, Defendant's acts and practices injured other persons.

   b. Defendant's acts or practices had the capacity to injure other persons.

   c. Defendant's acts or practices have the capacity to injure other persons.

### D. **Injury to Business or Property**

43. The fourth element of a WCPA claim is the requirement that there be "injury to plaintiff in his or her business or property[.]" *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); *see* RCW 19.86.090 ("who is injured in his or her business or

property").  As detailed above and re-incorporated here, Plaintiff has suffered significant damages in many respects.  Improtantly, Plaintiff has a commercial and business interest in his ability to get financial at gaming and casino locations it itself injury to Plaintiff's profession and trade.  Moreover, Plaintiff's inability to access capital, his depletion of ability to conduct his business were harmed.  Moreover, Plaintiff has a legally cognized property interest in the nature of his report itself, even though it was created by Central Credit.  Plaintiffi has a cognizable property interest in its accuracy as well and in the reputational and professional interests in his professional image as well.  All of these were harmed by the dissemination of a patently false report.

**E.  Causation of Injury**

44.  The fifth element of a Washington CPA claim is the requirement of "causation"—i.e., the requirement that the injury is caused by the unfair or deceptive practice or act.  *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn.2d 778, 780 (1986); see RCW 19.86.090 ("actual damages sustained by him or her").   The injuries described above were caused by the inaccuracy, as further detailed above and re-incorporated here.  Moreover, the injuries would have been lessened by a provision of notice regarding Plaintiff's rights because Plaintiff would have exercised them.

**PRAYER FOR RELIEF**

45.  Plaintiff prays for actual damages, punitive damages, statutory damages, trebling of damages, costs, fees, and injunctive relief, among all other relief available in law and equity, pursuant to both the FCRA, the WFCRA, and the WCPA.

**JURY DEMAND**

46.  A jury trial is hereby demanded by all Plaintiffs as to all issues so triable.

Date: December 11, 2024                 Respectfully submitted,

                                        **DIGITAL JUSTICE FOUNDATION**
                                        A NONPROFIT, PUBLIC-INTEREST FIRM

                                        By */s/ Andrew Grimm*
                                            Andrew Grimm (WSBA 51486)
                                            DIGITAL JUSTICE FOUNDATION
                                            15287 Pepperwood Drive
                                            Omaha, Nebraska 68154
                                            (531) 210-2381
                                            Andrew@DigitalJusticeFoundation.org


                     **CERTIFICATE OF SERVICE**

        I certify that the foregoing has been served via **electronic filing** via this Court's CM/ECF system.


DATED: December 11, 2024                 Respectfully submitted,

                                         */s/ Andrew Grimm*
                                         Andrew Grimm