THE HONORABLE RICHARD A. JONES

# IN THE UNITED STATES DISTRICT COURT

# FOR THE WESTERN DISTRICT OF WASHINGTON

ABRAHAM LEAVITT,
  *Plaintiff*,

vs.

CENTRAL CREDIT, LLC,
  *Defendant*.

Case No. 2:23-cv-01817-RAJ

**Plaintiff's Response in Opposition to Central Credit's Motion to Dismiss (*i.e.*, Dkt.33)**

NOTING DATE: Feb. 27, 2025

1

**TABLE OF CONTENTS**

Page

ISSUES BEFORE THE COURT .................................................................................. 3

ARGUMENT ........................................................................................................... 4

   I.    THE COMPLAINT PROPERLY ALLEGES FEDERAL FCRA AND STATE WFCRA VIOLATIONS. .......................................................................................... 4

       A.     Federal 1681i(a)(1) Violations: Defendant misreads *Carvalho*................... 4

       B.     Federal 1681i(a)(6) Violations: Defendant does not defend its misconduct. ........... 11

       C.     State Violations: The state claims are not derivative of the federal claims. .............. 11

   II.   THE COMPLAINT'S SHOWING OF WFCRA VIOLATIONS MEET THE ELEMENTS OF THE WCPA *PER SE*............................................................................................ 15

       A.     Elements One/Two: WFCRA violations are deceptive and unfair *per se*. ................ 15

       B.     Element Three: WFCRA violations harm the public interest *per se*. ........................ 17

       C.     Elements Four/Five: WFCRA violations injure property *per se*. .............................. 19

   III.   THE ALLEGATIONS MEET THE PLEADING REQUIREMENTS. .................................... 22

       A.     Legal Standard: Defendant misreads the *Twombly* / *Iqbal* standard........................ 23

       B.     Application: The allegations meet the *Twombly* / *Iqbal* standard............................. 25

   IV.   LEAVE TO AMEND SHOULD BE AFFORDED IF THERE ARE INSUFFICIENCIES. ....................... 26

       A.     Plaintiff reads the Court's order differently............................................................. 26

       B.     Regardless, leave to amend should be freely granted. .............................................. 27

   V.   THIS COURT HAS ARTICLE III JURISDICTION.......................................................... 28

CONCLUSION ...................................................................................................... 29

CERTIFICATE OF COMPLIANCE ........................................................................... 30

CERTIFICATE OF SERVICE................................................................................... 30

# ISSUES BEFORE THE COURT[1]

1. <u>Federal §1681i(a)(1) Violations</u>:  Whether the §1681i(a)(1) elements are met.  (Answer: Yes.  *See* Section I.A, *infra*).

2. <u>State RCW 19.86.090(1) Violations</u>: Whether the Washington courts would refuse to apply Defendant's misreading of federal law to state credit-reporting laws.  (Answer: Yes.  *See* Section I.C, *infra*.)

3. <u>The WCPA Elements</u>: Whether the Washington Consumer Protection Act are met.  (Answer: Yes.  *See* Sections II.A-II.C, *infra*.)

4. <u>Federal Pleading Standards</u>: Whether the *Twombly / Iqbal* federal pleading standard are met.  (Answer: Yes, it's met.  *See* Section III, *infra*.)

5. <u>Amendment</u>: Whether the amended complaint complied with the prior order and, regardless, whether, <u>*if*</u> there is any pleading insufficiency, leave to amend should be given.  (Answer: Yes.  *See* Section IV, *infra*.)

6. <u>Facial Attack on Jurisdiction</u>:  Whether the complaint alleges an Article III injury-in-fact.  (Answer: Yes.  *See* Section V, *infra*).

---

[1] All emphasis added unless otherwise indicated.  Citations are to the ECF pagination, not internal pagination. For quoted authorities, internal brackets, quotations marks, citations, and the like are omitted for ease of reading, unless otherwise noted.

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# ARGUMENT

## I.   THE COMPLAINT PROPERLY ALLEGES FEDERAL FCRA AND STATE WFCRA VIOLATIONS.

### A. Federal 1681i(a)(1) Violations: Defendant misreads *Carvalho*.

The motion to dismiss attacks the legal sufficiency of the pleadings of Defendant's §1681i(a)(1) violations.  Dkt.33 at 2, 8-10; *see* Dkt.31 at 6-12 (compl.).  The motion errs.  It misreads its own central authority, *Carvahlo*, and overlooks highly relevant authorities of this Court.

In enacting the Fair Credit Reporting Act (the "FCRA"), Congress recognized that false credit reporting—what's happened here—has "**grave**" consequences and can disrupt and derail lives and livelihoods.  *E.g.*, 15 U.S.C. § 1681(a)(4) ("There is a need to insure that consumer reporting agencies [like Defendant[2]] exercise their **grave responsibilities** with fairness, impartiality, and a respect for the consumer's right to privacy."); *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024) ("**A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business**.  Recognizing the importance of accuracy in credit reporting, Congress adopted the Fair Credit Reporting Act in 1970 (FCRA)."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1153 (9th Cir. 2009) ("**grave responsibilities** [in assembling and evaluating consumers' credit, and disseminating information about consumers' credit]" (brackets in opinion)); *Riser v. Cent. Portfolio Control, Inc.*, No. 3:21-cv-05238-LK, 2022 U.S. Dist. LEXIS 109545, at *5 (W.D. Wash. June 21, 2022) (King, J.) ("**grave responsibilities**"); *FTC v. Gill*, 265 F.3d 944, 947 (9th Cir. 2001) ("It has been said that **bad credit is like a 'Scarlet Letter**.'").

The pertinent section of the FCRA at issue here, 15 U.S.C. § 1681i, effectuates these purposes by requiring consumer reporting agencies ("CRAs"), like Defendant, to conduct investigations into

---

[2] Notably, Defendant does not challenge that it is a consumer reporting agency.  Dkt.31 at 7-8¶10 (allegation that Defendant is a CRA).

4

disputed portions of the credit reports they issue.  *E.g.*, *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 99 (2012) (Section 1681i "sets out in great detail the procedures to be followed by a credit bureau in the event of challenges to the accuracy of its information"); *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (A "CRA must conduct a free and reasonable reinvestigation"); *Myers v. Bennett Law Offices*, 238 F.3d 1068, 1074 (9th Cir. 2001) ("The FCRA is intended to safeguard against the improper reporting of information on a credit report[.]"); *id.* At 1074 n.5 ("Almost all of the FCRA's provisions address the dual purpose of accuracy and confidentiality."); *Moran v. Screening Pros, LLC*, 25 F.4th 722, 725 (9th Cir. 2022) ("reasonable reinvestigation after an item in the report is disputed by the consumer"); *Leavitt v. Credit Cent., LLC*, 2024 U.S. Dist. LEXIS 211396, at *7 (W.D. Wash. Nov. 20, 2024) (Jones, J.) ("Section 1681i relates to the investigation of consumer disputes.").

Here, the motion to dismiss pertains to the legal sufficiency of <u>*element 1*</u> (whether the complaint alleges inaccurate information in the CRA's credit report) and <u>*element 4*</u> (whether the complaint alleges that the CRA failed to conduct a reasonable investigation in response to the consumer's notice of dispute).  Dkt.33 at 2, 8-10; Dkt. 31 at 8-9¶11, 10¶13; *see, e.g.*, *Leavitt v. Credit Cent., LLC*, 2024 U.S. Dist. LEXIS 211396, at *7-8 (W.D. Wash. Nov. 20, 2024) (Jones, J.) (listing elements for a §1681i(a)(1)(A) violation); *Ivy v. Wells Fargo Bank, N.A.*, 2019 U.S. Dist. LEXIS 182913, at *20-21 (W.D. Wash. Aug. 29, 2019) (Tsuchida, M.J.) (same); *Garcia v. Experian*, 2016 U.S. Dist. LEXIS 132565, at *6 (W.D. Wash. Sep. 26, 2016) (Robart, J.) (same).

Both elements are plainly met here.

<u>*As to element 1*</u>, Defendant's credit report was plainly inaccurate.  Defendant prepared and distributed a false credit report that falsely reported that gaming debts were "<u>***unpaid***</u>" when, in fact, before the reporting, "Plaintiff ***paid*** them ***off in their entirety***[.]"  Dkt.31 at 8¶11.

Reporting a debt as unpaid when the debt is in fact fully paid is a clear inaccuracy; indeed, the reporting done by Defendant here was a blatant and patent falsehood and certainly materially misleading.  *See*, *e.g.*, *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (A "consumer must present evidence tending to show that a [CRA] prepared a report containing inaccurate information."); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (inaccuracy requirement should be applied to "comport[] with the purpose of the FCRA, which is 'to protect consumers from the transmission of inaccurate information about them'"); *Leavitt v. Credit Cent., LLC,* , 2024 U.S. Dist. LEXIS 211396, at *8 (W.D. Wash. Nov. 20, 2024) (Jones, J.) (noting that this "key element" of inaccuracy is met by "evidence showing that a CRA prepared a credit report containing inaccurate information")

Falsely reporting that someone did _not_ pay (when they in fact _did_ pay) is exactly the type of harm that the FCRA meant to prevent because it's the type of falsehood that will lead to denials of credit, which is exactly what happened here—*i.e.*, Plaintiff's lines of credit evaporated.  *E.g.*, Dkt.31 at 12¶11 (The "the false credit reports resulted in credit lines at various and major gaming locations to restrict his access to credit."); *see*, *e.g.*, *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) (inaccuracies that "can be expected to adversely affect credit decisions" are actionable); *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) (actionable inaccuracy where false or misleading "in such a way and to such an extent that it can be expected to adversely affect credit decisions"); *Steinmetz v. Am. Honda Fin. Corp.*, 835 F. App'x 199, 201 (9th Cir. 2020) (even just an "inconsistent" reporting is actionable because of what it "<u>could</u> imply" negatively about the consumer's credit (underline in opinion)); *Riser v. Cent. Portfolio Control, Inc.*, 2022 U.S. Dist. LEXIS 109545, at *6-7 (W.D. Wash. June 21, 2022) (King, J.) ("Information is inaccurate for purposes of Sections 1681e and 1681i where it is either patently incorrect _or_ is misleading in such a way and to such an extent that it can be expected to adversely affect credit decisions.").

*As to element 4,* Defendant did **_not_** conduct a reasonable investigation but rather (i) blocked Plaintiff's email rather than meaningfully inquire about the nature of the dispute; (ii) made no attempt to request documentation from either Plaintiff or the furnisher-casino; (iii) never inquired as to what documents the furnisher-casino has reviewed or inquired about the scope of the casino's investigation or made any effort to ensure the casino-furnisher had done a reasonable investigation such that Defendant could rely upon it; and (iv) made no attempt to inquire whether the purported debt had actually been paid off—which is the fundamental inaccuracy at issue here.  Dkt.31 at 10¶13; *see, e.g., Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1156 (9th Cir. 2009) ("*It would make little sense to deem the CRA's investigation 'reasonable' if it consisted primarily of requesting a superficial, unreasonable investigation by the furnisher of the information.*").

What Defendant did is not a reasonable investigation—and, **_regardless, the motion to dismiss overlooks numerous authorities holding that the reasonableness of the investigation is a genuine dispute of material fact determined at trial_**.  *E.g., Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) ("[W]hat constitutes a 'reasonable reinvestigation' will vary depending on the circumstances of the case."); *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147, 1161 (9th Cir. 2009) (noting that "'reasonableness' is generally a question for a finder of fact"); *Cooper v. Milliman, Inc.*, 2024 U.S. Dist. LEXIS 123093, at *9 (W.D. Wash. July 12, 2024) (Jones, J.) ("As this Court has held before, 'a reasonableness determination for these purposes is generally, by definition, a genuine issue of material fact.'"); *Collins v. Milliman, Inc.*, 2023 U.S. Dist. LEXIS 26783, at *6-7 (W.D. Wash. Feb. 16, 2023) (Jones, J.) (same); *Healy v. Milliman, Inc.*, 2022 U.S. Dist. LEXIS 65701, at *9 (W.D. Wash. Apr. 8, 2022) (Coughenour, J.) (same).

Thus, element 1 and element 4 are properly alleged and shown in the complaint.  The motion to dismiss should be denied.

\*\*\*\*\*

7

The motion to dismiss focuses on *Carvalho*— but *Carvalho* is inapposite here because Plaintiff is not making the arguments, allegations, or assertions rejected in *Carvalho*:

1. In *Carvalho*, the plaintiff-consumer fully "**conceded**" that the reporting was "correct" on its face. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 891 (9th Cir. 2010). She was arguing that "inaccuracy is **_not_** a required element of a reinvestigation claim." *Id.* at 889. That's **_not_** Plaintiff's argument. And, here, Plaintiff makes no such concession—because what's at issue here *is* a blatant inaccuracy and falsehood in Defendant's credit reporting about Plaintiff: Defendant reported as *unpaid* what was in fact *fully paid*. Dkt.31 at 8¶11.

2. In *Carvalho*, the plaintiff-consumer's case was predicated upon a "**dubious at best**" legal theory that what a contract called a "**courtesy**" (*i.e.*, her doctor would try to bill the insurer "as a courtesy" before asking the plaintiff to pay for her own medical care) somehow meant she was "was not *legally* obligated to pay" her doctor. *Carvalho*, 629 F.3d at 891; *id.* at 891 n.11 ("**dubious at best**"). Here, the inaccuracy is fundamentally *factual*: Defendant reported as unpaid when, *in fact*, Plaintiff had paid the casino in full via "cash and gambling chips[.]" Dkt.31 at 8¶11.

3. In *Carvalho*, the plaintiff-consumer argued that the mere fact of her notice of dispute meant she should be "**deemed innocent until _proven_ guilty**"—arguing that §1681i(a) required the CRA to remove reporting that (conceded there to be accurate) until it delved into this dubious legal theory and provided an "a legal opinion on the merits." *Carvalho*, 629 F.3d at 891-892. Here, Plaintiff is not arguing that the failure of Defendant to "prove[]" the accuracy is the problem, but rather than Defendant did not undertake a reasonable investigation, for reasons discussed above and in the complaint. Dkt.31 at 10¶13.

*Carvalho* is fundamentally inapposite here.  Moreover, the motion to dismiss makes other errors in its reading of *Carvalho* and applying it to this case:

4.    Plaintiff isn't "collaterally attacking" anything.  *See* Dkt.33 at 2.  There is **no prior judgment** under collateral attack.  *See, e.g., Carvalho*, 629 F.3d at 891 ("courts have been loath to allow consumers to mount collateral attacks on the legal validity of their debts in the guise of FCRA reinvestigation claims."); *Florence v. Experian Info. Sols., Inc.*, 775 F. App'x 308, 309-310 (9th Cir. 2019) ("Here, the Florences are trying to *collaterally attack* the legal validity of the Wells Fargo ***judgment***, which cannot form the basis of an FCRA claim against Experian."); *see also, e.g. Hoffmann v. Pulido*, 928 F.3d 1147, 1150 (9th Cir. 2019) ("collateral attack" is an attack upon a "***prior judgment***").

5.    Contrary to the motion to dismiss, *Carvalho* dealt only with the ***inaccuracy element*** (element 1), *not* the reasonable investigation element (element 4).  *Carvalho*, 629 F.3d at 892 ("Because Carvalho has failed to establish ***an element of a prima facie reinvestigation claim—inaccuracy***—we conclude that the district court properly granted summary judgment to the CRAs."); *see, e.g., Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1251 (9th Cir. 2022) ("This order of proof makes sense: if there is no inaccuracy, then the reasonableness of the investigation is not in play."); *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 758-59 (9th Cir. 2018) ("Appellants fail to point to any inaccuracies on their credit reports.  Because they fail to meet this threshold burden, we need not consider whether Experian had reasonable procedures or conducted reasonable reinvestigations[.]"); *Riser v. Cent. Portfolio Control Inc.*, 2023 U.S. Dist. LEXIS 56983, at *6-7 n.2 (W.D. Wash. Mar. 31, 2023) (King, J.) ("*threshold showing* of 'inaccuracy"); *Riser v. Cent. Portfolio Control, Inc.*, 2022 U.S. Dist. LEXIS 109545, at *12 (W.D. Wash. June 21, 2022) (King, J.) ("*threshold requirement*");

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

*Brutsky v. Capital One, N.A.*, 2018 U.S. Dist. LEXIS 10797, at \*15-16 (W.D. Wash. Jan. 23, 2018) (Jones, J.) ("_threshold inquiry_").

6.  The inaccuracy here is factual: Defendant's false reporting as _unpaid_ what, **_in fact_**, was _fully paid_.  Dkt.31 at 8-9¶11.  Whether or not payment occurred is a _factual_ issue—and inaccuracy about it is an omitted key _fact_.  Yet, _legal_ inaccuracies can be actionable as well, contrary to what Defendant seems to erroneously believe.  Dkt.33 at 8-10.  The Ninth Circuit has held as much in *Gross*.  *E.g.*, *Gross v. CitiMortgage, Inc.*, 33 F.4th 1246, 1249 (9th Cir. 2022) ("**As a matter of _law_**, the reports were false."); *id.* at 1251 ("established **as a matter of _law_** that CitiMortgage's reports were 'patently incorrect'").  And, although *Gross* is about _furnisher_ inaccuracy in §1681s-2, the Ninth Circuit has held that inaccuracy should mean the same thing across the various provisions of the FCRA.  *E.g.*, *Shaw v. Experian Info. Sols. Inc.*, 891 F.3d 749, 756 (9th Cir. 2018) ("Consistent with 'the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation,' we apply the same understanding of 'inaccurate' in analyzing § 1681e and § 1681i claims."); *Riser v. Cent. Portfolio Control Inc.*, 2023 U.S. Dist. LEXIS 56983, at \*6-7 n.2 (W.D. Wash. Mar. 31, 2023) (King, J.) (The "meaning of 'inaccurate' should be the same for both CRAs and furnishers if courts are to 'adhere to the maxim of statutory construction that similar terms appearing in different sections of a statute should receive the same interpretation.'" (quoting *Carvalho*, 629 F.3d at 890)).  And, here, the relevant statutes use the same terms.  *Compare* 15 U.S.C. § 1681e(b) ("accuracy") <u>with</u> 15 U.S.C. § 1681i(a)(1)(A) ("accuracy" and "inaccurate") <u>and with</u> 15 U.S.C. § 1681s-2(a)(1)(A) ("inaccurate").

Defendant misreads and misapplies *Cavalho*.  The §1681i(a)(1) theories of liability are properly alleged.  Defendant's motion to dismiss should be denied.

**B. Federal 1681i(a)(6) Violations: Defendant does not defend its misconduct.**

Beyond the §1681(a)(**1**) violations that support the instant §1681n and §1681o claims, Plaintiff has also alleged §1681(a)(**6**) violations. Dkt.31 at 12¶17-18¶25. The motion to dismiss does not challenge these claims on their merits. Dkt.33 at 3-4, 15-19. Of course, it doesn't. The FCRA's §1681i "sets out ***in great detail*** the procedures to be followed by a credit bureau in the event of challenges to the accuracy of its information[,]" *CompuCredit*, 565 U.S. at 99—and Defendant just didn't comply with the law, Dkt.31 at 12¶17-18¶25. Under these provisions, the CRA like Defendant is supposed to notify the consumer like Plaintiff of his rights to transparency and disclosure of procedures used and of his right to include a statement of dispute. 15 U.S.C. § 1681i(a)(6)(B)(iii)-(iv).

These are highly important disclosures because they allow consumers (and consumers' counsel) to go back to the CRAs and propose what the CRA might have overlooked—*without* going to court. And, the notification of their right about the statement of dispute, §1681i(a)(6)(B)(iv) because it permits those who receive the credit report to get "both sides of the story and can reach an independent determination of how to treat a specific, disputed account." *E.g.*, *Carvalho*, 629 F.3d at 892. Regardless, Defendant has no serious challenge to these claims on the merits. And, moreover, Defendant has lodged none in its motion, Dkt.33 at 3-4, 15-19, and cannot do so in reply. Thus, any such merits challenge is forfeited for purposes of this motion.

**C. State Violations: The state claims are not derivative of the federal claims.**

Likewise, the complaint also asserts violations of the Washington Fair Credit Reporting Act ("WFCRA") that serve as bases for violation of the Washington Consumer Protection Act ("WCPA"). Dkt.31 at 18¶26-23¶44. These WFCRA violations arise under Defendant's failure to fairly reinvestigate, RCW 19.182.090(**1**), and Defendant's failure to notify Plaintiff of his rights, RCW 19.182.090(**8**)(**b**)(**v**).

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

***First***, as to the RCW 19.182.090**(8)(b)(v)** violation, Defendant raises no defense on the merits—mirroring Defendant's failure to attempt to muster any legal defense of its misconduct on the merits under §1681i(a)(6).  *See* Dkt.33 at 19; *see generally* Dkt.33.  The statute plainly required Defendant to provide "notice" (RCW 19.182.090(8)(b)) of "the consumer's right to file a brief statement" of dispute directly in his erroneous credit report (RCW 19.182.090(8)(b)(vi)).  And, Washington enforces this right as written.  *Handlin v. On-Site Manager, Inc.*, 2018 Wash. App. LEXIS 903, at *13 (Wash. App. Apr. 23, 2018) (affirming willful violation because defendant "On-Site has not offered a reasonable excuse for its failure to a provide post-reinvestigation notice"); *Handlin v. On-Site Manager, Inc.*, 2016 Wash. Super. LEXIS 146, at *6 (King Cty. Wash. Super. Ct. Aug. 31, 2016) ("On-Site did not make any post-reinvestigation disclosures to the Handlins. Therefore, On-Site violated RCW 19.182.090(8)(a).").

***Second***, as to the RCW 19.182.090**(1)** violation, Defendant argues that this Court could simply apply *Carvalho* on the same flawed theory that Defendant urges for the federal §1681(a)(1)(A) violations.  Dkt.33 at 19 ("***First***").  And, insofar as ***Defendant*** is making the ***same*** argument, if this Honorable Court rejects that profound misreading of *Carvalho*, this Court can and should reject the argument as applied to RCW 19.182.090(1) violations as well.  *See*, *e.g.*, *Gaspar v. Turn Techs. Inc.*, 2023 U.S. Dist. LEXIS 228646, at *2-3 (W.D. Wash. Dec. 22, 2023) (Zilly, J.) (where "Defendants contend that Plaintiff's claim under the Washington Fair Credit Reporting Act ('WFCRA') should be dismissed for the same reasons that Plaintiff's FCRA claim should be dismissed," the denial of the motion to dismiss as to the FCRA claims also means that the same argument against the WFCRA violations "**likewise lacks merit**"); *Lambert v. Beneficial Mortg. Corp.*, 2007 U.S. Dist. LEXIS 33119, at *8 (W.D. Wash. May 4, 2007) (Leighton, J.) ("co-extensive").

***Third***, the same is not true in reverse.  ***Even if*** this Court thinks *Carvalho* somehow barred the §1681(a)(1) theories, that conclusion would not apply to the RCW 19.182.090(1) violations.

Notably, RCW 19.182.090 is strictly enforced by the Washington courts—and they have not added extra-textual requirements as the federal courts have. *See, e.g.*, *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890 (9th Cir. 2010) ("Although the FCRA's reinvestigation provision, ***15 U.S.C. § 1681i, does not on its face require that an actual inaccuracy exist*** for a plaintiff to state a claim, many [federal] courts, including our own, have imposed such a requirement."); *Handlin v. On-Site Manager, Inc.*, 2018 Wash. App. LEXIS 903, at *13 (Wash. App. Apr. 23, 2018) (enforcing the WFCRA strictly according to its text); *Handlin v. On-Site Manager, Inc.*, 2016 Wash. Super. LEXIS 146, at *6 (King Cty. Wash. Super. Ct. Aug. 31, 2016) (same).

Indeed, the Washington Supreme Court applies the plain meaning of the text and does not add requirements not found in the text—so *Carvalho*'s admission that it is adding extra-textual requirements not found in the language of the statute is a non-starter under Washington law. *E.g.*, *State v. M.Y.G.*, 199 Wash. 2d 528, 531, 509 P.3d 818, 820 (2022) ("The 'surest' indicator of legislative intent is the statute's text, so if the statute's meaning is plain on its face, we 'give effect to that plain meaning.'");  *Money Mailer, LLC v. Brewer*, 194 Wash. 2d 111, 118, 449 P.3d 258, 262 (2019) ("We first look to the plain meaning of the statutory language.").

Notably, *Carvalho* was applying *California*'s credit-reporting laws, not the federal FCRA, but the *Carvalho* court was justified in doing so because of what *California*'s courts had said. *Carvalho v. Equifax Info. Servs., LLC*, 629 F.3d 876, 890-891 (9th Cir. 2010) ("Moreover, we operate under the assumption that California courts would interpret the FCRA and CCRAA consistently. *See Olson*, 3 Cal. Rptr. 3d at 309."); *Olson v. Six Rivers Nat'l Bank*, 111 Cal. App. 4th 1, 12, 3 Cal. Rptr. 3d 301, 309 (2003) ("Both the federal and state versions of this provision permit the furnishing of consumer credit information if the information is intended to be used in connection with a credit transaction 'involving the consumer as to whom the information is to be furnished and involving the extension of credit to … the consumer.'").

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

1    Thus, *even if* Defendant properly read *Carvalho* and applied it, there would still be fatal flaw

2   to applying it to the state claims here: *Washington* courts do *not* add extra-textual requirements to the

3   WFCRA bur rather strictly enforce the WFCRA according to its terms.  Thus, *Carvalho*'s admission

4   that it was applying an extra-textual requirement found *nowhere in the Washington statute* means that

5   *Washington would not add one and would decline to follow* Carvalho.

6    **Fourth**, if this Court dismisses the federal claims, then, rather than wade into open questions

7   of state law after all federal claims are dismissed, it should simply exercise its discretion to decline to

8   supplemental jurisdiction over the state claims.  *See*, *e.g.*, Dkt.31 at 5¶5 (basis of jurisdiction over the

9   state claims is "supplemental jurisdiction"); 28 U.S.C. § 1367(c)(3) (permitting this Court to decline

10   supplemental jurisdiction if it has "dismissed all claims over which it has original jurisdiction"); 28

11   U.S.C. § 1367(c)(1) (permitting this Court to decline supplemental jurisdiction if "the claim raises a

12   novel or complex issue of State law"); <u>Shepherd v. City of Seattle</u>, No. 23-35195, 2024 U.S. App.

13   LEXIS 22701, at *5-6 (9th Cir. Sep. 6, 2024) ("a district court's decision not to exercise its

14   supplemental jurisdiction is sufficient if the analysis references the proper 'case-specific' sub-clause

15   under § 1367(c)").

16    *****

17    For these reasons, the motion to dismiss should be denied as to the RCW 19.182.090 violations

18   in suit.

14

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

1  **II.**   **THE COMPLAINT'S SHOWING OF WFCRA VIOLATIONS MEET THE ELEMENTS OF THE**
2         **WCPA *PER SE*.**

3         Furthermore, the motion to dismiss also argues that that the complaint does not plead the

4  elements of a Washington Consumer Protection Act ("WCPA") claim.  Dkt.33 at 20-21 ("***Second***");

5  Dkt.33 at 20 (arguing the complaint "fails to plead sufficient facts to satisfy all five required elements

6  of a private cause of action under the WCPA").  The motion errs.  There are two general responses:

7

8      1.  Defendant's misconduct that violates the WFCRA in turn violates the WCPA elements by

9         operation of law per se under RCW 19.182.150.

10

11     2.  And, moreover, the motion is blatantly incorrect because the complaint *does* make allegations

12        meeting the WCPA elements.  Dkt.31 at 20¶37-23¶44.

13

Each of the *Hangman Ridge'*s WCPA elements is addressed in turn below.  The primary WFCRA

14 statutory reference is RCW 19.182.150, which includes important legislative declarations that

15 establish WFCRA violations as *per se* fulfilling all the WCPA elements.

16

17     **A.  Elements One/Two: WFCRA violations are deceptive and unfair *per se*.**

18        The first two WCPA elements require that (1) there be an "unfair or deceptive act or practice"

19 and (2) that such act have "occurred in the conduct of trade or commerce."  *E.g.*, RCW 19.86.020

20 ("Unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade

21 or commerce are hereby declared unlawful."); RCW 19.85.010(2) (defining "trade" or "commerce");

22

23 *Hangman Ridge Training Stables v. Safeco Title Ins. Co.*, 105 Wn. 2d 778, 785, 719 P.2d 531, 535

24 (1986) ("The first element of a private CPA action is an unfair or deceptive act or practice.  RCW

25 19.86.020."); *id.* ("The second element which a private plaintiff must establish is that the act or

26 practice complained of occurred in the conduct of trade or commerce.  RCW 19.86.020.").

27

28

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

These first two elements can be met by reference to a legislative declaration—what's called a *per se* unfair or deceptive trade practice. *E.g.*, *Hangman Ridge*, 105 Wn. 2d at 786, 719 P.2d at 535 (1986) ("[T]these two elements may be established by a showing that the alleged act constitutes a per se unfair trade practice. A per se unfair trade practice exists when a statute which has been declared by the Legislature to constitute an unfair or deceptive act in trade or commerce has been violated."); *id.* ("Where the Legislature specifically defines the exact relationship between a statute and the CPA, this court will acknowledge that relationship**.**").

RCW 19.182.150 includes a legislative declaration that a violation of the WFCRA is unfair and deceptive. *E.g.*, RCW 19.182.150 ("A violation of this chapter [RCW 19.182, *i.e.*, a violation of the WFCRA] is an unfair or deceptive act in trade or commerce and an unfair method of competition for the purpose of applying the consumer protection act, chapter 19.86 RCW."); *Handlin v. On-Site Manager, Inc.*, 187 Wn. App. 841, 848, 351 P.3d 226, 229 (2015) ("A per se unfair trade practice exists when the defendant has violated a statute that has been declared by the legislature to constitute an unfair or deceptive act in trade or commerce. […] Washington's Fair Credit Reporting Act is such a statute."); *Hennessey v. Radius Glob. Sols. LLC*, 2024 U.S. Dist. LEXIS 227166, at *39 (W.D. Wash. Dec. 16, 2024) (Estudillo, J.) ("A violation of the WFCRA constitutes an unfair or deceptive act in trade under WCPA."); *Leavitt v. Credit Cent., LLC*, 2024 U.S. Dist. LEXIS 211396, at *9 (W.D. Wash. Nov. 20, 2024) (Jones, J.) ("RCW 19.182.150 explicitly makes a violation of the WFCRA a violation of the WCPA."); *Cain v. Trans Union LLC*, 2006 U.S. Dist. LEXIS 25146, at *16-17 (W.D. Wash. Feb. 9, 2006) (Lasnik, J.) (same).

Here, the complaint alleges violations of the WFCRA. Dkt.31 at 18¶27-20¶36. Thus, from the legislative declaration in RCW 19.182.150, the complaint meets the first two elements of a WCPA claim *per se* by operation of law. The motion is simply wrong about the WCPA elements.

**B.  Element Three: WFCRA violations harm the public interest *per se*.**

The third WCPA element requires a showing of harm to the public interest.  *E.g.*, *Hangman Ridge*, 105 Wn. 2d at 787, 719 P.2d at 536 ("The third element is that of a public interest showing."); RCW 19.86.920 ("It is, however, the intent of the legislature that this act shall not be construed to prohibit acts or practices which are reasonable in relation to the development and preservation of business or which are not injurious to the public interest, nor be construed to authorize those acts or practices which unreasonably restrain trade or are unreasonable per se.").

As with the first two WCPA elements discussed above, the third / public-interest element can also be met by a legislative declaration of public interest.  *E.g.*, *Hangman Ridge*, 105 Wash. 2d at 791, 719 P.2d at 538 ("[T]he public interest element may be satisfied per se.  The per se method requires a showing that a statute has been violated which contains a specific legislative declaration of public interest impact.").

Since *Hangman Ridge*, the legislature has expounded upon the ways to meet the public-interest by enacting RCW 19.86.093.  RCW 19.86.093 ("In a private action in which an unfair or deceptive act or practice is alleged under RCW 19.86.020, a claimant may establish that the act or practice is injurious to the public interest because it: **(1)** Violates a statute that incorporates this chapter [RCW 19.86]; **(2)** Violates a statute that contains a specific legislative declaration of public interest impact; or **(3)(a)** Injured other persons; **(b)** had the capacity to injure other persons; or **(c)** has the capacity to injure other persons.").

The WFCRA both (1) incorporates 19.86 and (2) contains a specific legislative declaration of public interest impact, meaning that showing a WFCRA violation entails that WCPA element three is met *per se* by operation of law.  *E.g.*, RCW 19.182.150 ("The legislature finds that the practices covered by this chapter [RCW 19.182, *i.e.*, the  WFCRA] are matters vitally affecting the public interest for the purpose of applying the consumer protection act, chapter 19.86 RCW.  Violations of

17

1   this chapter are not reasonable in relation to the development and preservation of business."); *Handlin*

2   *v. On-Site Manager, Inc.*, 187 Wn. App. 841, 848, 351 P.3d 226, 229 (2015) ("**The public interest**

3   **element may also be satisfied per se by 'showing that a statute has been violated which contains**

4   **a specific legislative declaration of public interest impact.' Washington's Fair Credit Reporting**

5   **Act is such a statute**."); *Feldmann v. Lakeview Loan Servicing LLC*, 2021 U.S. Dist. LEXIS 80336,

6   *15-16 (W.D. Wash. Apr. 27, 2021) (Pechman, J.) (The "Washington State Legislature has declared

7   'that consumers have a vital interest in establishing and maintaining creditworthiness,' Defendants'

8   behavior can hardly be described as a public good.  RCW 19.182.005. In fact, Washington courts

9   have concluded that violations of Washington's Fair Credit Reporting Act constitute per se violations

10   of the public interest element of the CPA."); *T-Mobile USA, Inc. v. Huawei Device USA, Inc.*, 115 F.

11   Supp. 3d 1184, 1197 (W.D. Wash. 2015) (**Jones, J.**) (noting "**statutes with legislative declarations**

12   **that establish a per se public interest impact.  *E.g.*, RCW 19.182.150**").

13

14        Here, the complaint alleges violations of the WFCRA.  Dkt.31 at 18¶27-20¶36.  Thus, from

15   the legislative declaration in RCW 19.182.150, the complaint meets the third of a WCPA claim *per*

16   *se* by operation of law.  The motion is simply wrong about the WCPA elements.

17

18        Moreover, beyond the *per se* declaration, there is an alternative basis through which the third

19   element is met here.  Washington statute entail that the third element is met if the Defendant's act or

20   practice "had" or "has the capacity to injure other persons."  RCW 19.86.093(3)(b)-(c).  Here,

21   falsehoods in credit reports affect vital interests—and have the capacity to injure not only Plaintiff

22   but also those who are misled by the false reporting.  *See*, *e.g.*, RCW 19.182.005 (noting that end

23   users of credit reports like "financial institutions and other creditors depend upon fair and accurate

24   credit reports to efficiently and accurately evaluate creditworthiness"); *Feldmann v. Lakeview Loan*

25   *Servicing LLC*, 2021 U.S. Dist. LEXIS 80336, *15-16 (W.D. Wash. Apr. 27, 2021) (same).

26

27

28

18

Not only did the Defendant's misconduct and false credit reporting harm Plaintiff, but it also harmed others, including those received and relied upon its false reporting.  *See*, *e.g.*, Dkt.31 at 8-9¶11, 12¶16 (detailing how Defendant sent its false reporting to casinos that then relied upon it); RCW 19.182.050; *Sukumar v. Nautilus, Inc.*, 842 F. Supp. 2d 951, 965 (W.D. Va. 2012) (Turk, J.) ("The question for the Court on this element, however, is whether [Defendant's] conduct had or has the capacity to injure other persons besides the Plaintiff[].  Such a broadly-worded standard, coupled with the legislative admonition that the CPA must be construed liberally, convinces the Court that any reasonable trier of fact would be required to answer the inquiry in the affirmative.") (granting plaintiff-side summary judgment); *Sukumar v. Nautilus, Inc.*, 829 F. Supp. 2d 386, 400 (W.D. Va. 2011) (Turk, J.) ("It seems obvious that the practice of falsely marking products which are sold to the general public in the stream of commerce has the capacity to injure persons other than [the plaintiffs].").

Here, both because the complaint alleges violations of the WFCRA, Dkt.31 at 18¶27-20¶36, and because it shows actions that did and could harm others, Dkt.31 at 8-9¶11, 12¶16, the complaint meets the third element WCPA claim *per se* by operation of law and through the instant allegations. The motion is simply wrong about the WCPA elements.

### C.  Elements Four/Five: WFCRA violations injure property *per se.*

The fourth and fifth WCPA elements are (4) injury and (5) causation.  *E.g.*, RCW 19.86.090 ([**4**] "***injured*** in his or her business or property [**5**] ***[caused] by a violation*** of RCW 19.86.020"); *Hangman Ridge*, 105 Wash. 2d at 792, 719 P.2d at 539 ("The fourth element of a private CPA action requires a showing that plaintiff was injured in his or her 'business or property'"); *id.* at 792-793 ("The fifth element is that of causation. Only a person 'injured in his business or property *by a violation of RCW 19.86.020* . . ." may bring a private action. (Italics ours.)).

These elements are met here in three ways.

19

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

***First***, RCW 19.18.150 provides for statutory damages—and statutory damages provisions meet the WCPA's injury and causation elements as a matter of law. RCW 19.182.150 ("[W]here there has been willful failure to comply with any requirement imposed under this chapter, the consumer shall be awarded actual damages, ***a monetary penalty of one thousand dollars***, and the costs of the action together with reasonable attorneys'' fees[.]"); *see, e.g.*, *Wright v. Lyft, Inc.*, 189 Wn. 2d 718, 728-29, 406 P.3d 1149, 1153-54 (2017) (addressing whether another *per se* WCPA statute's "liquidated damages provision, RCW 19.190.040, establishes the causation and/or injury elements of a CPA claim as a matter of law or if the [plaintiff] must prove injury in fact prior to receiving damages"); *id.* ("**It is nonsensical for the legislature to write a [statutory] damages provision free of preconditions, only for this court to read in elements that lawmakers did not include**. Indeed, our canons of statutory construction warn against such an interpretation."); *id.* at 732 (concluding that the statutory damages provision "establishes the injury and causation elements of a CPA claim as a matter of law").

Here, Washington courts hold that the misconduct violating the WFCRA is willful unless a "reasonable excuse for its failure" is give. *E.g.*, *Handlin v. On-Site Manager, Inc.*, 2018 Wash. App. LEXIS 903, at *13 (Ct. App. Apr. 23, 2018) ("On-Site argues that if a violation of RCW 19.182.090(8)(a) occurred, it was not willful. *But On-Site has not offered a reasonable excuse for its failure to a provide post-reinvestigation notice.*"); *Handlin v. On-Site Manager, Inc.*, 2016 Wash. Super. LEXIS 146, *8-*9 (King Cty. Wash. Super. Ct. Aug. 29, 2016) ("On-Site knew or certainly should have known of its obligation to make post-reinvestigation disclosures Under RCW 19.182.090(8). On-Site willfully violated this requirement by providing no such disclosures at all."). Here, Defendant's misconduct was willful. *E.g.*, Dkt.31 at 10-11¶14, 16¶23. RCW 19.182.090's provisions are clear and there is no reasonable excuse for, *inter alia*, not providing notice of consumers' rights. *See* RCW 19.182.090(8).

As such, the WCPA elements 4 and 5 are met by virtue of the WFCRA's provision for liquidated / statutory damages against Defendant's willful misconduct. Injury and causation are met because these statutory damages are automatic and not discretionary. *E.g.*, *Wright*, 189 Wn. 2d at 729, 406 P.3d at 1154 ("*automatic*" (italics in original); *id.* at 731 ("automatic damages"); *Perez-Farias v. Glob. Horizons, Inc.*, 175 Wn. 2d 518, 533-534, 286 P.3d 46, 53-54 (2012) ("nondiscretionary and 'automatic'"). This makes sense because the Washington Legislature intends statutory damages to have a "deterrent effect" upon reckless wrongdoing. *See*, *e.g.*, *Wright*, 189 Wn. 2d at 731-732 (intentional "deterrent effect" of statutory damages); David E. Sorkin, *Technical and Legal Approaches to Unsolicited Electronic Mail*, 35 U.S.F. L. Rev. 325, 378 (2001) ("laws provide for liquidated or statutory damages in lieu of actual damages"); Derek D. Simmons, *No Seconds on Spam: A Legislative Prescription to Harness Unsolicited Commercial E-Mail*, 3 J. Small & Emerging Bus. L. 389, 404-405 (1999) (statutory-damages intended "motivate" private attorneys general to protect rights and were "useless" to deter commercial-email misconduct); *cf. also Handlin v. On-Site Manager, Inc.*, 187 Wn. App. 841, 844, 351 P.3d 226, 227 (2015) (public-interest counsel at the Northwest Justice Project representing indigent persons and providing access to law and able to do so because of the statutory damages").

***Second***, the Washington Court of Appeals, interpreting the Washington Legislature's declarations about consumer interests in RCW 19.182.005, has determine that consumers, like Plaintiff, have a ***property*** interest in their credit reports.

Thus, the CRAs willful failure to investigate and correct blatant falsehoods in the credit report *is* an injury to the consumer's property interest in their credit report. *E.g.*, *Handlin v. On-Site Manager, Inc.*, 187 Wn. App. 841, 850, 351 P.3d 226, 230 (2015) (accepting the plaintiff's "argu[ment] that the consumer disclosures mandated by the act are a form of property"); *id.* at 850 (noting that, under RCW 19.182.005 "the information has commercial utility for the consumer"); *id.*

21

("The Handlins had a right to use and possess information in On-Site's files."). Under the analysis of the Washington Court of Appeals in *Handlin*, consumers have a property interest in the credit reporting. After all, they can *use* the credit reports to obtain things, like extension of credit. *See*, *e.g.*, *Dep't of Agric. Rural Dev. Rural Hous. Serv. v. Kirtz*, 601 U.S. 42, 45 (2024) ("**A credit report can determine everything from whether a person can secure a credit card, purchase a home, win a new job, or start a small business**.").

   ***Third***, Plaintiff has alleged allegations of how, beyond the injury to his property interest in the credit report, Defendant's misconduct had downstream harms. *E.g.*, Dkt.31 at 23¶43 ("Plaintiff has a commercial and business interest in his ability to get financial at gaming and casino locations it itself injury to Plaintiff's profession and trade. Moreover, Plaintiff's inability to access capital, his depletion of ability to conduct his business were harmed. Moreover, Plaintiff has a legally cognized property interest in the nature of his report itself, even though it was created by Central Credit. Plaintiff[] has a cognizable property interest in its accuracy as well and in the reputational and professional interests in his professional image as well. All of these were harmed by the dissemination of a patently false report.").

   For these three reasons, the motion to dismiss is incorrect on WCPA elements 4 & 5.

## III.   THE ALLEGATIONS MEET THE PLEADING REQUIREMENTS.

   The motion to dismiss also attacks the factual sufficiency of the allegations. *E.g.*, Dkt.33 at 2-3 ("***Second***"); Dkt.33 at 10-15. There are two problems: (1) the motion misunderstands the *Twombly* / *Iqbal* standard and (2) when those misunderstandings are corrected, it becomes clear that complaint alleges sufficient factual detail under Rule 8(a)'s short-and-plaint statement standard and does not rest on mere legal conclusions or recitations of the elements.

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

**A. Legal Standard: Defendant misreads the *Twombly* / *Iqbal* standard.**

*Twombly* / *Iqbal* and their progeny make **three essential principles** that the motion to dismiss overlooks:

1. **Short & Plain Statement Required**: All that is required is under the governing pleading standard is a "***short and plain statement***" that, if taken as true (removing pure recitation of elements), would show "that the pleader is entitled to relief." *E.g.*, *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) ("Federal Rule of Civil Procedure 8(a)(2) requires only 'a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests[.]'"); *Ashcroft v. Iqbal*, 556 U.S. 662, 677-678 (2009) ("'short and plain statement of the claim showing that the pleader is  entitled to relief'"); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("only 'a short and plain statement of the claim showing that the pleader is entitled to relief'"); *Klin v. Cloudera, Inc.*, 121 F.4th 1180, 1186 (9th Cir. 2024) (same).

2. **Detailed Allegations Not Required**: A "complaint attacked by a Rule 12(b)(6) motion to dismiss ***does not need detailed factual allegations***[.]" *E.g.*, *Twombly*, 550 U.S. 544, 555 (2007) ("a complaint attacked by a Rule 12(b)(6) motion to dismiss ***does not need detailed factual allegations***"); *Iqbal*, 556 U.S. 662, 678 (2009) ("*As the Court **held** in* Twombly, the pleading standard Rule 8 announces ***does not require 'detailed factual allegations'***"); *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) ("**Specific facts are not necessary**[.]"); *Dana v. Idaho Dep't of Corr.*, 2024 U.S. App. LEXIS 13763, at *1-2 (9th Cir. June 6, 2024) ("A complaint 'does not require 'detailed factual allegations[.]'").

3. **Legal Conclusions Alone Insufficient**: Legal conclusions or a "recitation of elements" is insufficient. *E.g.*, *Twombly*, 550 U.S. 544, 555 (2007) ("a plaintiff's obligation to provide the

23

'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do"); *Iqbal*, 556 U.S. 662, 678 (2009) ("A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'); *id.* ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice"); *Sandra Shah v. Ahmc Healthcare, Inc.*, 2024 U.S. App. LEXIS 18047, at *2 (9th Cir. July 23, 2024) ("None of these is a 'legal conclusion couched as a factual allegation' that may be disregarded as conclusory."); <u>Fidler v. Arizona</u>, 2024 U.S. App. LEXIS 8613, at *5-7 (9th Cir. Apr. 10, 2024) (crediting all "nonconclusory allegations" that don't simply recite elements).

The motion to dismiss overlooks these key principles.  In asking for "detailed information" and specifics rather than a short and plaint statement, Dkt.33 at 1, the motion mistakes the governing pleading standard.  *Twombly* and *Iqbal* held that "detailed" allegations are not required.  So, in asking for a copy of the report (which Defendant has and which its counsel have reviewed); for the details of the casinos (which Defendants' counsel know through email communications and their own records of doing an investigation—and should through their investigation), and which is asking for something not required.  What Defendant argues is necessary—detailed allegations and specific facts—is contrary to what the Supreme Court has expressly held.

That's why this Court has not required as much.  *See*, *e.g.*, *Brutsky v. Capital One, N.A.*, 2018 U.S. Dist. LEXIS 10797, at *15-16 (W.D. Wash. Jan. 23, 2018) (Jones, J.) ("At this stage in the proceedings, ***Plaintiffs need only plausibly allege that Defendant violated 15 U.S.C. § 1681s-2(b)(1) not, as Defendant suggests, show with specificity that Defendant reported factually inaccurate information***.").

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

B. **Application: The allegations meet the *Twombly* / *Iqbal* standard.**

Applying these governing principles, the motion to dismiss simply attempts to misapply the pleading standards based upon Defendant's misunderstanding of them.

*First*, the pleadings on inaccuracy—*i.e.*, Defendant's blatant falsehood of reporting an account as *unpaid* when it was actually *paid in full*—do not merely recite the element (*i.e.*, say more than that there was "some inaccuracy") and if taken as true (*i.e.*, that something fully paid was actually not paid at all) would meet the element. Dkt.31 at 8-9¶11, 14-15¶20. Further details are *not* required.

*Second*, the pleadings on notice—*i.e.*, that Plaintiff notified Defendant on or around October 28, 2023, and some of the contents of his notification—does not merely recite a legal conclusion (*i.e.*, says more than that Defendant was put on notice) and if taken as true (*i.e.*, that a consumer communicated with the CRA regarding the debt on a particular date and made disputes about its accuracy) would meet the requirement. Dkt.31 at 9¶12, 15¶21. Further details are *not* required. This is especially so because even the notification itself (not even the allegation of it) does "not require precise language." *Davis v. Experian Info. Sols., Inc.*, 849 F. App'x 690, 691 (9th Cir. 2021) ("A notice of dispute does not require precise language, and an 'inadequate [] notification . . . does not [] eliminate the duty [to reinvestigate] altogether.'").

*Third*, Plaintiff's dispute is plainly not frivolous or irrelevant. Reporting something as *unpaid* when it has in fact been *fully paid off* at the time of reporting is a patent falsehood. Moreover, consumer notices need not be detailed. *See id.*

*Fourth-Fifth*, the pleadings on why the investigation was unreasonable do not merely recite that it was unreasonable without further detail and, if taken as true, show that the investigation / response to Plaintiff's notification of dispute was not reasonable. Dkt.31 at 10¶13. As discussed above, this is an issue of fact.

*Sixth*, Plaintiff has alleged actual damages—*i.e.*, loss of credit lines that impinged his ability to play as a professional poker player.  That's damages—and further details are not needed under the pleading standard.  Dkt.31 at 11-12¶16, 17-18¶25, 22-23¶43.

*Finally*, the pleadings show that Defendant acted maliciously (in blocking Plaintiff's communications to an employee to stop his disputes) and, then, failed to inform Plaintiff of his rights.  If taken as true, these show that agents of Defendant were acting intentionally to harm his rights and that's all that must be shown.  Dkt.31 at 10-11¶14, 16¶23.

In short, the motion wants detailed factual allegations and specific facts, but they are simply not required on a Rule 12(b)(6) posture. *Iqbal*, 556 U.S. 662, 678 (2009) ("*As the Court **held in** Twombly*, the pleading standard Rule 8 announces *does **not** require 'detailed factual allegations'*); *Erickson*, 551 U.S. 89, (2007) ("**Specific facts are not necessary**[.]").

The same is true of the *Twombly / Iqbal* attack on the §1681i(a)(6) claims.  Plaintiff does not need to *prove* anything at the pleading stage by attaching letters, for example.  *See* Dkt.33 at 17.  Defendants desire for more specifics and more details is simply not required by the governing pleading standards in Rule 8(a) and *Twombly / Iqbal*.  Dkt.33 at 16-18.  The motion to dismiss should be denied.

## IV.    LEAVE TO AMEND SHOULD BE AFFORDED IF THERE ARE INSUFFICIENCIES.

### A.  Plaintiff reads the Court's order differently.

Plaintiff's counsel reads this Honorable Court's order differently than Defendant's counsel does.  The initial complaint was *pro se*.  Then, *as a courtesy to Defendant's counsel on their request*, Plaintiff's counsel agreed to swap the party defendant.  When this Honorable Court's order spoke of "these claims," Plaintiff's counsel understood it to be distinguishing between the §1681s-2 theories of liability (which Plaintiff's counsel indicated would not longer be pursued because Defendant is a CRA) and the remaining theories of liability (which Plaintiff is intending to pursue).

26

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

The order bears this out.  *Compare* Dkt.27 a5 5 ("Plaintiff no longer intends to pursue these [§1681s-2-related] claims.") *with* Dkt.27 at 6 ("Accordingly, the Court dismisses these [§1681i-related] claims with leave to amend."), Dkt.27 at 7 ("Therefore, the Court will allow Plaintiff to amend these [WFCRA/WCPA] claims.").  Moreover, the section on leave to amend gives no limitations on amendment, Dkt.27 at 8—which is appropriate because the complaint prior to amendment was a *pro se* complaint.  So, respectfully, Plaintiff submits that Defendant is misreading the order out of context.

And, the cause of action under the state law is under the WCPA.  The §1681i(a)(1), §1681(a)(6), and WFCRA allegations give a punctilious statement and structure to how the facts congeal into entitling Plaintiff to relief by showing the legal theory, but the claims are the same: §1681n/o claims.  As above, Defendant misunderstands the binding precedents on pleadings' standards.  Amendment isn't about this or that legal theory.  Amendment permits additional *factual* allegations—which is exactly what Plaintiff did in the amended complaint: allege additional facts.

## B.  Regardless, leave to amend should be freely granted.

Notably, *none* of Defendant's arguments in its motion attempt to show that there is some *fatality* in the allegations that would render amendment *futile*.  Rather, they argue that the showings are *insufficient*.  *See generally* Dkt.33.  Plaintiff disagrees.  But, because amendment would not be futile, if this Honorable Court feels that there is some element where all allegations are purely conclusory, the Court is respectfully requested to identify it and permit leave to amend.  *See*, *e.g.*, Fed. R. Civ. P. 15(a)(2) ("freely granted"); *Pace v. Bank of Am. Corp.*, 537 F. App'x 735, 736 (9th Cir. 2013) ("However, the district court erred in denying Pace leave to file the second amended complaint" in a FCRA action").  Plaintiff is not required to provide detailed allegation or specifics of the facts but *can* provide more if the purported deficiency is identified and leave is granted.  *See* Dkt.25 at 20-23 (providing more case law on amendment).

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

## V.     THIS COURT HAS ARTICLE III JURISDICTION.

The motion erroneously argues that there is not Article III standing to assert the §1681i(a)(6) and RCW 19.182090(8) claims about notification of Plaintiff's rights.  Dkt.33 at 18-19.  The motion is plainly mistaken.  Article III *injury in fact* is about the *harms* the plaintiff has suffered.  And, here, on these allegations, Plaintiff has suffered cognizable injuries: loss of lines of credit at major casinos; denial of further extensions of credit at casinos; loss of ability to finance his livelihood as a professional poker player; reputational harm as a deadbeat in the gaming community; and emotional distress—all of which could and would have been minimized had he timely been notified of his rights because he would have exercised them in the timeframe that they would have reduced or eliminated harm.  Dkt.31 at 17-18¶25; *see also* Dkt.31 at 11-12¶16, 22¶43-23¶44.  Under this Court's law, even causing a *waste* of plaintiff's time is enough—so these other allegations of injury are sufficient.  *See*, *e.g.*, *Alexander v. Experian Info. Sols., Inc.*, 812 F. App'x 426, 427 n.1 (9th Cir. 2020) ("We are unpersuaded by Experian's argument that Alexander lacks Article III standing. Sections 1681e and 1681i of the FCRA were enacted to protect consumers' concrete reputational interests, and Alexander alleges economic damages stemming from the alleged violations."); *Goz v. Allied Collection Servs., Inc.*, 812 F. App'x 544, 545 (9th Cir. 2020) ("emotional distress"); *Jaras v. Equifax Inc.*, 766 F. App'x 492, 494 (9th Cir. 2019) (jurisdiction where, as here, the plaintiff had "had tried to engage in or were imminently planning to engage in any transactions" that were adversely affected by the defendant's misconduct); Collins v. Milliman, Inc., No. 2:22-cv-00061-RAJ, 2023 U.S. Dist. LEXIS 26783, at *5-6 (W.D. Wash. Feb. 16, 2023) (Jones, J.) ("Courts have also routinely found that wasted time resulting from a defendant's FCRA violation is a sufficiently concrete and particularized injury to establish standing.").

There is plainly Article III standing here.  The motion should be denied.  (If granted, dismissal would be *without* prejudice.)

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381

**CONCLUSION**

Defendant's misconduct—reporting blatantly false and deeply harmful falsehoods about Plaintiff in its credit reports before failing to make a meaningful attempt to correct and failing to notify Plaintiff of his rights—disrupted Plaintiff's life profoundly.  It was with callous disregard that Defendant tried to thwart complying with its obligations under the FCRA and the WFCRA rather than working with Plaintiff to fix the problem.  The law does not allow this.  This action should proceed.  The motion to dismiss should be denied in full.

Date: February 6, 2025                         Respectfully submitted,

                                               **DIGITAL JUSTICE FOUNDATION**
                                               A NONPROFIT, PUBLIC-INTEREST LAW FIRM

                                               By */s/ Andrew Grimm*
                                                    Andrew Grimm (WSBA No. 51486)
                                                    DIGITAL JUSTICE FOUNDATION
                                                    15287 Pepperwood Drive
                                                    Omaha, Nebraska 68154
                                                    (531) 210-2381
                                                    Andrew@DigitalJusticeFoundation.org

                                                    *Attorney for Plaintiff*

**CERTIFICATE OF COMPLIANCE**

I hereby certify that this filing contains **8,250** words of argument.


Dated: February 6, 2025                    Respectfully submitted,

                                           /s/ Andrew Grimm
                                           Andrew Grimm


**CERTIFICATE OF SERVICE**

I hereby certify that I served the foregoing via CM/ECF.


Dated: February 6, 2025                    Respectfully submitted,

                                           /s/ Andrew Grimm
                                           Andrew Grimm

Plaintiff's Opposition to Defendant's
Second Motion to Dismiss

DIGITAL JUSTICE FOUNDATION
15287 Pepperwood Drive, Omaha, NE 68154
(531) 210-2381