HONORABLE RICHARD A. JONES

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

ABRAHAM LEAVITT,

    Plaintiff,

v.

CENTRAL CREDIT, LLC,

    Defendants.

Case No.  2:23-cv-01817-RAJ

ORDER

## I.     INTRODUCTION

THIS MATTER comes before the Court on Defendant Central Credit, LLC's ("Central Credit") motion to dismiss, dkt. # 33.  The Court has reviewed the motion, the submissions in support of and in opposition to the motion, the balance of the record, and the governing law.  For the reasons set forth below, the Court **GRANTS** the motion and **DISMISSES** the amended complaint **WITH LEAVE TO AMEND** as to the causes of action addressed in this order.

## II.   BACKGROUND

### A.   Factual Allegations

Defendant Central Credit is a consumer reporting agency under the Fair Credit Reporting Act ("FCRA"). Dkt. # 31 ¶ 10. Central Credit generates credit reports "regarding the creditworthiness of casino clients and casino patrons." *Id.*

Plaintiff Abrahman Leavitt alleges that while gambling at two casinos in the Bahamas, he "incurred gaming debts" that he paid off "in their entirety . . . before leaving these gaming locations each time." *Id.* ¶ 11. Accordingly, "although debts were incurred at these gaming locations, they were immediately paid off in full." *Id.* Mr. Leavitt alleges that despite these debts being fully paid off, Central Credit incorrectly included them as "unpaid gambling debt[s]" on Mr. Leavitt's credit report. *Id.* Mr. Leavitt further alleges that "on various occasions, including on or around October 15, 2023," Central Credit distributed the false reports to "a number of gaming locations including MGM Casino Properties, Station Casino Properties, Caesars Entertainment Properties, and other casino, gambling, and gaming establishments." *Id.*

On or around October 28, 2023, Mr. Leavitt notified Central Credit "that this information was false and requested that Central Credit correct this information by removing the non-payment and falsely reported debt from his gaming credit report." *Id.* ¶ 12. Mr. Leavitt alleges that initially, Central Credit "acted evasively" in an attempt to avoid their obligation to reinvestigate his dispute. *Id.* ¶ 13. For example, "Central Credit, acting through one of its employees, simply blocked [Mr. Leavitt's] email rather than work with him to discern the full nature and scope of its own inaccuracies and errors." *Id.* Mr. Leavitt further alleges that even after he "persisted" and Central Credit "stopped evading [his] inquiry," Central Credit failed to conduct a reasonable reinvestigation of his claims. *Id.* According to Mr. Leavitt, Central Credit's  reinvestigation was

unreasonable because it merely made a request to "credit reporting data furnishers as to whether [the disputed debt] was accurate." *Id.* Central Credit "made no meaningful attempt to discern the nature of the inaccuracy" from Mr. Leavitt and "made no attempt to determine whether the gaming debts . . . were fully paid off." *Id.*

Mr. Leavitt also takes issue with a letter from Central Credit dated November 21, 2023. *Id.* ¶ 22. He alleges the letter does not meet FCRA requirements because it did not (1) "include a notification that [Mr. Leavitt] has a right to know a detailed description of the procedures used to conduct the reinvestigation"; and (2) "does not contain a notice that [Mr. Leavitt] has a right to include a statement of dispute in his credit report prepared by Central Credit." *Id.*

Mr. Leavitt alleges he suffered damages due to Central Credit's unreasonable reinvestigation and failure to advise him of his statutory rights. *Id.* ¶¶ 16, 25. Mr. Leavitt alleges he "has exceptional talents and is able to make money through gambling and gaming." *Id.* ¶ 16. He further alleges "the false credit reports resulted in credit lines at various and major gambling locations [] restrict[ing] his access to credit" and thus, "he was unable to make as much money." *Id.* Mr. Leavitt also alleges he suffered reputational and emotional harm. *Id.* Finally, he alleges that had he known about his statutory rights, he would have exercised them, resulting in Central Credit correcting its error, Central Credit undertaking a better reinvestigation, and Mr. Leavitt including a statement of dispute in his credit report that would have mitigated the harm he suffered. *Id.* ¶ 25.

### B. Procedural History

On November 11, 2023, Mr. Leavitt, proceeding *pro se*, filed a complaint against Everi Holdings, Inc. ("Everi"). Dkt. # 1. On January 10, 2024, counsel entered an appearance on behalf of Mr. Leavitt. Dkt. # 5. Subsequently, the parties stipulated to

ORDER - 3

dismissing Everi, adding Central Credit as a defendant, and replacing all references to "Everi" in the initial complaint with "Central Credit." Dkt. # 15. Mr. Leavitt did not otherwise amend the substance of his complaint. *Id.* On May 27, 2024, Central Credit filed a motion to dismiss, dkt. # 20, which the Court granted, dkt. # 27. On December 11, 2024, Mr. Leavitt filed an amended complaint, dkt. # 31, which Central Credit now moves to dismiss, dkt. # 33.

### III. LEGAL STANDARD

To survive a motion to dismiss, a plaintiff must point to factual allegations in the complaint that "state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). In analyzing a motion to dismiss, courts assume the truth of the complaint's factual allegations and credit all reasonable inferences arising from those allegations. *Sanders v. Brown*, 504 F.3d 903, 910 (9th Cir. 2007). However, it "need not accept as true conclusory allegations that are contradicted by documents referred to in the complaint." *Manzarek v. St. Paul Fire & Marine Ins. Co.*, 519 F.3d 1025, 1031 (9th Cir. 2008).

### IV. DISCUSSION

**A.    First Cause of Action – Failure to Reasonably Investigate Disputed Credit Reporting**

To state a claim for failure to conduct a reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1), a plaintiff must allege: (1) the plaintiff's credit file contains inaccurate or incomplete information; (2) the plaintiff notified the consumer reporting agency directly of the inaccurate or incomplete information; (3) the plaintiff's dispute is not frivolous or irrelevant; (4) the consumer reporting agency failed to respond to the plaintiff's dispute with a reasonable reinvestigation; (5) the failure to reinvestigate caused the plaintiff to

ORDER - 4

suffer damages, and (6) actual damages resulted to the plaintiff. *Avetisyan v. Experian Info. Sols, Inc.*, No. 14-cv-5276, 2016 WL 7638189, at *9 (C.D. Cal. Jun. 3, 2016).

Central Credit argues that Mr. Leavitt's allegations as to the fourth element—that Central Credit's did not reasonably reinvestigate Mr. Leavitt's dispute—fails as a matter of law. Dkt. # 33 at 7–10. Specifically, Central Credit argues that as a credit reporting agency, all it is required to do is "contact the furnisher of the disputed information to verify its accuracy." *Id.* at 9. Central Credit argues this is exactly what the amended complaint alleges it did. *Id.* Mr. Leavitt argues Central Credit's reinvestigation was not reasonable because (1) it initially blocked Mr. Leavitt's email; (2) made no attempt to obtain additional documents; (3) did not inquire about the reasonableness of the furnishers' investigation into the disputed debt; and (4) did not independently investigate the disputed debt. Dkt. # 42 at 7. The Court finds that as alleged in the amended complaint, Mr. Leavitt fails to state a claim that Central Credit's reinvestigation was unreasonable.

### 1. Blocking Mr. Leavitt's Email

Mr. Leavitt's allegation that someone at Central Credit blocked his email when he tried to report the disputed debt is certainly concerning. *See* Dkt. # 31 ¶ 13. However, Mr. Leavitt also alleges that at some point, Central Credit sent a "request to the credit-reporting data furnishers" to inquire whether the disputed debt was accurate. *Id.* The amended complaint does not allege any other factually specific information about the circumstances giving rise to Central Credit blocking Mr. Leavitt's email or the result of these actions. Most significantly, the amended complaint does not say if the blocking of his email significantly delayed Central Credit's reinvestigation or otherwise materially impacted the result of the reinvestigation. Without these facts, the Court cannot find the

blocking on its own raises a plausible inference that Central Credit's overall reinvestigation was unreasonable.

### 2. Relying on Furnisher's Confirmation of Accuracy of Debt

The parties' remaining dispute centers on whether it was reasonable for Central Credit to exclusively rely on furnishers to confirm the accuracy of the disputed debt, or if Central Credit was required to make further inquiries. Central Credit relies heavily on *Carvalho v. Equifax Information Services, LLC*, 629 F.3d 876, 892 (9th Cir. 2010) to support its position. Dkt. # 33 at 8–10. In *Carvalho*, the plaintiff disputed whether she was "legally obligated" to pay a medical bill. 629 F.3d at 891. She sued three consumer reporting agencies for including the disputed debt on her credit report and failing to reasonably reinvestigate her claim. *Id.* The Ninth Circuit disagreed with plaintiff that consumer reporting agencies are required to undertake "a searching inquiry into the consumer's legal defenses to payment." *Id.* The court explained "credit reporting agencies are not tribunals" and "simply collect and report information furnished by others." *Id.* Accordingly, "a consumer disputing the legal validity of a debt that appears on her credit report should first attempt to resolve the matter directly with the creditor or furnisher, which 'stands in a far better position to make a thorough investigation of a disputed debt than the [consumer reporting agency] does on reinvestigation." *Id.* at 892. Based on this analysis, the court concluded the plaintiff "failed to establish an element of a prima facie reinvestigation claim—inaccuracy." *Id.* at 893.

The Court does not agree with Central Credit that *Carvalho* is directly on point and precludes Mr. Leavitt's claim. First, *Carvalho* relates to the first element of an unreasonable reinvestigation claim: whether the credit report contains inaccurate information. *See id.* Central Credit is therefore incorrect that *Carvalho* "interpreted what constitutes a reasonable reinvestigation by a credit reporting agency under the FRCA."

1  Dkt. # 33 at 8.  Second, and more importantly, *Carvalho* relates to a *legal* dispute as to
2  the debt at issue.  The court placed heavy emphasis on the fact that consumer reporting
3  agencies are "not tribunals," "are ill equipped to adjudicate contract disputes," and are
4  "not required as part of its reinvestigation duties to provide a legal opinion on the merits."
5  *Carvalho*, 629 F.3d at 891–82.  In contrast, the disputed debt here involves a factual
6  dispute.  Mr. Leavitt alleges Central Credit reported an "unpaid gambling debt" that was
7  in fact fully paid off.  Dkt. # 31 ¶ 11.

8  　　　　Although *Carvalho* is not directly applicable, its discussion highlights that
9  consumer reporting agencies are often one or more steps removed from the original
10 source of a disputed debt, and thus may be limited in what it can do during a
11 reinvestigation.  The Ninth Circuit also discussed the unique positioning of consumer
12 reporting agencies in *Gorman v. Wolpoff & Abramson, LLP*, 584 F.3d 1147 (9th Cir.
13 2009).  In that case, the court rejected the plaintiff's argument that consumer reporting
14 agencies have a more rigorous duty of investigation than furnishers of credit information.
15 *Id.* at 1155–57.  To the contrary, the court found that a consumer reporting agency's
16 "'reasonable investigation' consists largely of triggering the investigation by the
17 furnisher." *Id.* at 1156.  This is because the "furnisher of credit information stands in a
18 far better position to make a thorough investigation of a disputed debt than the [consumer
19 reporting agency] does on reinvestigation." *Id.*  After all, the consumer reporting agency
20 is a "third party, lacking any direct relationship with the consumer, and its responsibility
21 is to '*re* investigate' a matter once already investigated in the first place." *Id.* at 1156–
22 57 (emphasis in original).

23 　　　　The Ninth Circuit has not expressly ruled on the issue presented in this case:
24 whether a consumer reporting agency's exclusive reliance on a furnisher's confirmation
25 of a disputed debt satisfies the reasonable reinvestigation requirement.  *See Huffman v.*
26

ORDER - 7

*Experian Info. Sol., Inc.*, No. 19-cv-7408, 2021 WL 1561304, at *7 (N.D. Cal. Apr. 14, 2021). However, several district courts in this circuit have addressed this question in the context of a consumer reporting agency's exclusive use of an Automated Credit Dispute Verification ("ACVD") system to conduct its reinvestigation.[1] *See Huffman*, 2021 WL 1561304, *7. Those courts have found it is unreasonable to exclusively rely on the ACDV process "where a [consumer reporting agency] is affirmatively on notice that the reliability of a furnisher's information is suspect." *Id.* For example, exclusive reliance on the ACDV process may be unreasonable "in cases involving lengthy disputes" or "repeated notices of inaccuracies by the plaintiff." *Id.*, *8. It is also unreasonable in cases where the consumer reporting agency fails to "submit all relevant information related to the dispute to the furnisher." *Id.* On the other hand, a consumer reporting agency's exclusive reliance on the ACDV system is "sufficient to constitute a reasonable reinvestigation as a matter of law where the [consumer reporting agency] provided the furnisher with all relevant information and had no reason to suspect the furnisher's reliability." *Id.*

In *Avetisyan*, the court concluded there was a triable issue of fact as to whether consumer reporting agencies conducted a reasonable reinvestigation. 2016 WL 7638189, at *10. The plaintiff in that case disputed 30 or more accounts as being fraudulent. *Id.*

---

[1] ACDV systems allow consumer reporting agencies "to communicate consumer disputes to information furnishers . . . prompting an investigation by the information furnisher." *Ghazaryan v. Experian Info. Sols., Inc.*, No. 15-cv-9604, 2017 WL 5957640, at *1 n.1 (C.D. Cal. Jan. 4, 2017), *aff'd sub nom. Ghazaryan v. Equifax Info. Servs., LLC*, 740 Fed. App'x 157 (9th Cir. 2018). "Once the information furnisher has determined the accuracy of the disputed information, it sends its findings back to the consumer reporting agency using the ACDV system." *Id.* It is unclear from the amended complaint whether Central Credit used an ACDV system. Nevertheless, the Court finds cases analyzing ACDV systems are equally applicable to the parties' dispute here.

ORDER - 8

The court found a "jury could conclude based on the sheer number of disputes, and from Plaintiff's assertion that most accounts were not hers or were the result of fraud, that Experian and Trans Union should have questioned whether the problems with Plaintiff's accounts were more serious than mere inaccuracies and that it was not reasonable to merely ask the furnishers to verify the data using the ACDV process." *Id.*

In *Grigoryan v. Experian Information Solutions, Inc.*, 84 F. Supp. 3d 1044 (C.D. Cal. 2014), the court likewise found a triable issue of fact on the plaintiff's unreasonable reinvestigation claim. *Id.* at 1075. The plaintiff in that case sent the consumer reporting agencies "documentary evidence [] in the form of payment receipts" showing his account was not late, but there was no evidence that the consumer reporting agencies forwarded these receipts to furnishers as part of the reinvestigation. *Id.* The court found, in part, that the consumer reporting agencies' failure to forward the documents created a triable issue of fact regarding the reasonableness of their reinvestigation. *Id.*

In contrast, in *Huffman*, the court found a consumer reporting agency's exclusive reliance on the ACDV process was reasonable as a matter of law. 2021 WL 1561304, *9. In that case, the plaintiff alerted Experian that a negative balance on his credit card account was the result of identity theft and Experian relied on the ACDV process to confirm the account. *Id.*, at *2–3. The court found this was reasonable as a matter of law because the plaintiff offered no evidence "establishing that Experian had notice of [the furnisher's] purported unreliability." *Id.*, at *9. In particular, the court remarked that the plaintiff did not provide additional information to support his claim of identity theft, and without this information, "it is unclear what other investigative steps Experian could have taken to reinvestigate outside of the ACDV process." *Id.*

In *Ghazaryan*, the court likewise found a consumer reporting agency's exclusive reliance on the ACDV process was reasonable as a matter of law. 2017 WL 5957640, at

ORDER - 9

\*5. In that case, the plaintiff notified Equifax that her credit report incorrectly showed she made a late payment on her credit card, and Equifax reinvestigated through the ACDV process. *Id.* The court found Equifax's ACDV request "was reasonably calculated to enable [the furnisher] to investigate [plaintiff's] dispute, which [the furnisher] was in a 'far better position' than Equifax to do." *Id.* On appeal, the Ninth Circuit affirmed, finding "Equifax had determined [the furnisher] to be a reliable source" and plaintiff "gave Equifax no reason to question that determination." *Ghazaryan*, 740 Fed. App'x at 157. As a result, "Equifax was entitled to rely on [the furnisher's] confirmation that [plaintiff] had missed a payment notwithstanding that this information ultimately proved to be inaccurate." *Id.*

Here, the allegations do not support a plausible inference that Central Credit was required to do more than confirm the accuracy of the disputed debt with furnishers. Mr. Leavitt alleges the following regarding his notification to Central Credit:

> On or around, October 28, 2023, Plaintiff notified Central Credit regarding the inaccurate and incomplete information. Plaintiff informed Central Credit that this information was false and requested that Central Credit correct this information by removing the non-payment and falsely reported debt from his gaming credit report.

Dkt. # 31 ¶ 12. It is entirely unclear what exactly Mr. Leavitt communicated to Central Credit, including if he identified the two gambling debts at issue in this case, if he indicated the debts were paid off, and if he provided any documentation, such as payment receipts, to support his dispute. Without this information, the Court cannot draw a reasonable inference that Central Credit was on affirmative notice that the reliability of the casino furnishers' information may be suspect. Unlike in *Avetisyan*, there are no allegations that Mr. Leavitt communicated anything about the size or complexity of his dispute that could raise an inference that merely relying on confirmation from the

furnishers is not reasonable. Unlike in *Grigoryan*, there is no allegation that Mr. Leavitt submitted any documentation to Central Credit, such as payment receipts, that Central Credit should have passed along to the furnishers as part of a reasonable reinvestigation.[2] Rather, based on the facts as presently alleged, this case is closer to *Huffman* and *Ghazaryan* because there is nothing to suggest Mr. Leavitt or anyone else put Central Credit on notice that the casino furnishers may be unreliable. In particular, similar to *Huffman*, without allegations that Mr. Leavitt provided documentation or other useful information to Central Credit regarding his dispute, it is unclear what other investigative steps Central Credit could have taken to reinvestigate other than to confirm the debt with the furnisher casinos. *See Huffman*, 2021 WL 1561304, *9

Accordingly, the Court GRANTS Central Credit's motion to dismiss Mr. Leavitt's first cause of action. Because the Court finds Mr. Leavitt fails to allege Central Credit's reinvestigation was unreasonable, it need not reach Central Credit's other arguments for dismissal.

### B. Second Cause of Action – Failure to Notify Consumer of Statutory Rights

The FRCA requires consumer reporting agencies to "provide written notice to a consumer of the results of a reinvestigation." 15 U.S.C. § 1681i(a)(6)(A). The written notice must also include certain content specified in the statute, including (1) "a notice that, if requested by the consumer, a description of the procedure used to determine the accuracy and completeness of the information shall be provided to the consumer by the

---

[2] The Court acknowledges that at this stage, Mr. Leavitt may not have sufficient information to plead that Central Credit failed to provide documents to furnishers as part of its reinvestigation. However, it is unclear from the amended complaint whether Mr. Leavitt provided Central Credit with any documents that could be passed on in the first place.

agency"; and (2) "a notice that the consumer has the right to add a statement to the consumer's file disputing the accuracy or completeness of the information." 15 U.S.C. § 1681i(a)(6)(B). Mr. Leavitt's second cause of action alleges Central Credit failed to provide him with the two notices described above.

Central Credit argues this newly added claim should be dismissed because it exceeds the scope of the Court's prior order granting Mr. Leavitt leave to amend. Dkt. # 33 at 15–16. In addition, Central Credit argues this claim is insufficiently pleaded. *Id.* at 16–19.[3]

Because the current amended complaint is the first time Mr. Leavitt had the benefit of submitting a complaint drafted by counsel, the Court will permit the addition of Mr. Leavitt's new claim for failure to notify him of his statutory rights.

The Court agrees, however, that Mr. Leavitt fails to plausibly allege this claim. Specifically, it is unclear from Mr. Leavitt's allegations whether Central Credit in fact failed to inform Mr. Leavitt of the two required notices. Mr. Leavitt alleges that he received a letter dated November 21, 2023 and a "summary of rights" attachment to the letter. Dkt. # 31 ¶ 22. He alleges the letter failed to inform him of both (1) his right to request a description of the reinvestigation procedure; and (2) his right to include a statement of dispute in his file. *Id.* However, he goes on to *only* allege that the attachment failed to inform him of his right to include a statement of dispute. *Id.* The only reasonable inference is that the attachment *did* advise Mr. Leavitt of his right to request a description of the reinvestigation procedure and therefore there is no violation on that basis. Later in the amended complaint, Mr. Leavitt alleges that "[f]or one of the failures, earlier letters

---

[3] Central Credit also argues Mr. Leavitt lacks standing to bring this claim. Dkt. # 33 at 18–19. While standing is typically addressed as a threshold issue, for the reasons discussed below, the Court finds it is difficult to understand what, if any, violation occurred and thus cannot assess standing based on the current allegations.

appear to have included it . . . ." *Id.* ¶ 23. It is unclear which of the two alleged violations "it" refers to and what earlier letters included the information. Taking all allegations together, it is unclear if Mr. Leavitt was in fact deprived of notice of the two statutory rights at issue. Accordingly, the Court GRANTS Central Credit's motion to dismiss Mr. Leavitt's second cause of action.[4]

### C. Third Cause of Action – Violation of Washington Consumer Protection Act

Mr. Leavitt also asserts a claim under the Washington Consumer Protection Act ("WCPA") based on Central Credit's failure to conduct a reasonable reinvestigation and failure to notify Mr. Leavitt of his statutory rights in violation of the Washington Fair Credit Reporting Act ("WFCRA"). These claims are dismissed for the same reason as Mr. Leavitt's claims under the FCRA. *See Henderson v. GMAC Mortg. Corp.*, No. 05-5781, 2008 WL 1733265, at *7 (W.D. Wash. Apr. 10, 2008) (dismissing WCPA claim for the same reasons as plaintiff's FCRA claim), *aff'd*, 347 F. App'x 299 (9th Cir. 2009).

Mr. Leavitt argues dismissal of his FCRA claims does not necessarily require dismissal of his WCPA claim because the underlying WFCRA statute is "strictly enforced" while the FCRA has been interpreted to include "extra-textual requirements." Dkt. # 42 at 13. The only example Mr. Leavitt provides, however, relates to the inaccuracy element of an unreasonable reinvestigation claim. *Id.* The Court is not

---

[4] Central Credit repeatedly notes that Mr. Leavitt did not attach various documents to his amended complaint, including the November 21, 2023 letter. *See, e.g.*, Dkt. # 33 at 17. The Court does not agree that Mr. Leavitt is required to attach these documents to survive a motion to dismiss. Moreover, documents like the November 21, 2023 letter are presumably also in Central Credit's possession and may be attached to its motion to dismiss under the incorporation by reference doctrine. *See Khoja v. Orexigen Therapeutics, Inc.*, 899 F.3d 988, 1002 (9th Cir. 2018). If Central Credit chooses not to do so, the Court is required to accept all of Mr. Leavitt's well-pleaded allegations as true and construe them in the light most favorable to Mr. Leavitt.

ORDER - 13

dismissing Mr. Leavitt's FCRA and WCPA claims on that basis and thus any purported discrepancy between the FCRA and WFCRA on the inaccuracy element does not alter the Court's analysis.

### D.     Leave to Amend

The defects discussed above are capable of amendment. While Central Credit argues this is technically the second time Mr. Leavitt has amended his complaint, dkt. 33 at 22, the current amended complaint is the first drafted by counsel. Accordingly, the Court grants Mr. Leavitt leave to amend, but only to allege additional facts in support of the three causes of action discussed in this order: failure to conduct reasonable reinvestigation under 15 U.S.C. § 1681i(a)(1), failure to notify consumer of statutory rights under 15 U.S.C. § 1681i(a)(6), and violation of the WCPA based violations of RCW 19.182.090(1) and RCW 19.182.090(8)(b). Mr. Leavitt may not add any additional or different claims in a further amended complaint without agreement of counsel or leave of the Court pursuant to Federal Rule of Civil Procedure 15(a)(2). In addition, Mr. Leavitt is advised that if he chooses to file an amended complaint and it suffers from similar deficiencies, the Court is not inclined to grant any leave for further amendment.

//
//
//
//
//
//

## V.   CONCLUSION

For the foregoing reasons, the Court **GRANTS** Central Credit's motion to dismiss, dkt. # 33, and **DISMISSES** the amended complaint **WITH LEAVE TO AMEND** within 21 days of the entry of this order as to the causes of action addressed in this order.

Dated this 28th day of August, 2025.

*Richard A. Jones*
_____
The Honorable Richard A. Jones
United States District Judge